(811 P.2d 529)

No. 65,429

STATE OF KANSAS, *Appellee*, v. DWIGHT L. ALMOND III, *Appellant.*

Opinion filed May 24, 1991.

*Robert D. Hecht* and *Deborah L. Hughes*, of Scott, Quinlan & Hecht, of Topeka, for appellant.

*Debra L. Billingsley* and *Steve M. Howe*, assistant district attorneys, *Gene M. Olander*, district attorney, and *Robert T. Stephan*, attorney general, for appellee.

Before DAVIS, P.J., REES and BRAZIL, JJ.

REES, J.: This is a direct appeal by the defendant Dwight L. Almond from his conviction of operating a motor vehicle while under the influence of alcohol (K.S.A. 1990 Supp. 8-1567).

We are called upon to decide whether the trial court erred in denying Almond's motion to suppress (1) his statement that he had been drinking the night of the accident and (2) the result of his breathalyzer test. We find no reversible error and affirm.

Almond was involved in a one-car accident. Officer Royer arrived to investigate the accident. While they were both sitting in Royer's police car, Royer took from Almond the information needed for the required accident report. Royer noticed a faint odor of alcohol on Almond's breath. Almond frequently repeated himself and was slow in answering Royer's questions. Royer asked Almond if he had been drinking. Almond replied affirmatively; he said he had had his last drink at 9:00 p.m., one and one-half hours before the accident. Royer placed Almond under arrest and

took him to the police station. He was given a breathalyzer test. It resulted in a reading greater than .10. Almond was then given the *Miranda* warning.

Almond complains that he was in custody and interrogated by Royer without receiving the *Miranda* warning and that it was as a result of the interrogation that he admitted he had been drinking; therefore, his admission should have been suppressed. He also complains that the result of the breathalyzer test should have been suppressed because he was not given the *Miranda* warning prior to the test. Because neither Almond's statement nor the result of the breathalyzer test was the product of "custodial interrogation" which triggers the need for a *Miranda* warning, we disagree with Almond's arguments.

In *State v. Price*, 233 Kan. 706, 712, 664 P.2d 869 (1983), the Supreme Court stated: "The *Miranda* warning is required where there is a custodial interrogation of the defendant by police officers. *Miranda* recognized, however, that general on-the-scene questioning of citizens in the factfinding process does not constitute custodial interrogation requiring a *Miranda* warning."

Almond argues that his situation is different from that in *Price* because Royer's questioning was already at the accusatory stage and not routine investigation such as in *Price*. We are not persuaded. The defendant in *Price* was questioned in a patrol car to get general information necessary to complete the accident report form. The defendant told the officer that he had been drinking prior to the accident and had fallen asleep while he was driving. *Price*, 233 Kan. at 707. Almond does not convince us that his case must be distinguished from *Price*.

Cases from other jurisdictions similarly hold that inquiry during the investigation of an accident does not rise to the level of custodial interrogation which requires the *Miranda* warning. See *State v. Seagle*, 96 N.C. App. 318, 385 S.E.2d 532 (1989); *Stalls v. Penny*, 62 N.C. App. 511, 302 S.E.2d 912 (1983).

In *Berkemer v. McCarty*, 468 U.S. 420, 82 L. Ed. 2d 317, 104 S. Ct. 3138 (1984), a defendant stopped in a traffic stop was asked if he had been drinking; the defendant replied he had been drinking beer and had smoked marijuana. He was placed under arrest after the trooper observed the defendant's slurred speech

and staggering manner. 468 U.S. at 423. The United States Supreme Court stated:

"[W]e find nothing in the record that indicates that respondent should have been given *Miranda* warnings at any time prior to the time [the trooper] placed him under arrest. . . . [No] aspects of the interaction of [the trooper] and respondent support the contention that respondent was exposed to 'custodial interrogation' at the scene of the stop. . . .

"We conclude, in short, that respondent was not taken into custody for the purposes of *Miranda* until [the trooper] arrested him. Consequently, the statements respondent made prior to that point were admissible against him." 468 U.S. at 441-42.

Furthermore, in an accident situation such as Almond's, the driver has a statutory duty to provide information to an officer who also has a duty to investigate and make a report. K.S.A. 1990 Supp. 8-1604; 8-1611; 8-1612.

According to the rules of *Price*, Almond's inculpatory statement made during Royer's inquiry for completion of the accident form was admissible.

We turn to Almond's complaint that his breathalyzer test result should have been suppressed because the test was requested and administered before the *Miranda* warning was given. We disagree. We have held that an officer's request that a person submit to a breathalyzer test is not custodial interrogation. *State v. Leroy*, 15 Kan. App. 2d 68, 72, 803 P.2d 577 (1990). As an officer's request to submit to a blood alcohol test does not solicit the communication of personal beliefs or knowledge of facts, defendant did not have a Fifth Amendment right to counsel. *Leroy*, 15 Kan. App. 2d at 71. Almond is mistaken in asserting that he had a right to counsel before he submitted to a breathalyzer test.

The trial court did not err in denying the motion to suppress Almond's statement or the result of the breathalyzer test because there was no violation of *Miranda* rules.

Almond's next complaint is that the State did not provide an adequate foundation for the admission of the result of his breath test. Specifically, he questions (1) whether the Intoxilyzer 5000 was operated correctly; (2) whether Royer properly followed the testing procedure; (3) whether the certification of the Intoxilyzer 5000 was properly authenticated; and (4) whether the State failed

to show the breath test met the statutory definition of alcohol concentration.

Royer testified that he had not read the manufacturer's directions for the Intoxilyzer 5000. Therefore, Almond argues, Royer could not know how to operate the machine.

"Whether an adequate evidentiary foundation was laid is a question of fact for the trial court and largely rests in its discretion." *State v. Lieurance*, 14 Kan. App. 2d 87, 91, 782 P.2d 1246 (1989), *rev. denied* 246 Kan. 769 (1990).

In *City of Shawnee v. Gruss*, 2 Kan. App. 2d 131, 132, 576 P.2d 239, *rev. denied* 225 Kan. 843 (1978), we said that "[t]he regulations also require that breath testing machines be operated strictly in accordance with the manufacturer's operational manual." K.A.R. 28-32-1(*a*)(3) provides: "Equipment shall be operated strictly according to the description provided by the manufacturer and approved by the department of health and environment."

Almond interprets the rules too narrowly. In *Gruss*, 2 Kan. App. 2d at 133-34, we held:

"The appellant . . . challenges the qualifications of the operator and the breathalyzer machine. It is sufficient to say that the Kansas Department of Health and Environment has established a program for certifying breath testing machines and operators. Both the operator and apparatus in question were currently certified at the time the appellant was tested. The current certification, in addition to the officer's testimony that he had passed all of the periodic proficiency tests required . . . ., shows the appellant's argument to be without merit."

Similarly, Royer testified he was certified to run the machine, and Glenda Wilkinson, the Shawnee County operations secretary, who maintains the records on breath testing equipment and operator certification, testified Royer was certified. She produced the original copy of the certification record filed in her office. We see no abuse of discretion by the trial court holding that the breathalyzer machine was operated correctly.

Almond further argues that Royer did not follow the proper procedure in testing him because he did not wait for a full 20 minutes after Almond had belched to allow mouth alcohol to dissipate.

Royer conceded that he did not wait a full 20 minutes, but he went on to testify that, if Almond's mouth alcohol content had

been high enough to skew the results, the machine's printout would have so indicated. Royer, as a certified operator, was competent to testify that the Intoxilyzer 5000 has an indicator which records mouth alcohol content and that the indicator did not register when Almond was tested. We do not see that the trial court abused its discretion in admitting Royer's testimony concerning the testing procedure.

Almond additionally argues that the State's exhibits, which were copies of documents showing Royer was a certified operator of the Intoxilyzer 5000 and that the machine itself was certified, were not properly authenticated because they were not attested to.

K.S.A. 60-465 provides in pertinent part: "A writing purporting to be a copy of an official record or of an entry therein, meets the requirements of authentication if . . . (2) evidence has been introduced sufficient to warrant a finding that the writing is a correct copy of the record or entry."

In *Lieurance*, 14 Kan. App. 2d at 92, we accepted the testimony of the sheriff's deputy as to his recognition of an original copy of the Intoxilyzer 5000 certification. Here, Wilkinson was the actual keeper of the records. Her testimony was enough to establish a proper foundation.

Finally, Almond argues the State failed to provide testimony equating his breath test result with the statutory definition of alcohol concentration, "number of grams of alcohol per . . . 210 liters of breath." K.S.A. 1990 Supp. 8-1013.

Royer testified that the reading of Almond's breath alcohol concentration was .172, a concentration exceeding the .10 legal maximum.

K.S.A. 1990 Supp. 8-1005(b) provides that, in a criminal prosecution for operating a motor vehicle while under the influence of alcohol, if the alcohol concentration was .10 or more, it shall be prima facie evidence that the defendant was under the influence of alcohol to a degree that rendered the person incapable of driving safely.

We see no abuse of discretion by the trial court's admission of evidence purportedly lacking proper foundation.

In sum, we conclude the trial court did not err in denying Almond's motion to suppress his "admission" or the results of

the breathalyzer test. "If the findings of the trial court on a motion to suppress evidence are based on substantial evidence, this court will not substitute its view of the evidence for that of the trial court." *State v. Doile*, 244 Kan. 493, 499, 769 P.2d 666 (1989).

Affirmed.