(180 P.3d 1087)
No. 98,836

STATE OF KANSAS, *Appellant*, v. ERNIE WAYNE VANEK, *Appellee*.

Opinion filed April 18, 2008.

*John H. Taylor*, deputy county attorney, and *Paul J. Morrison*, attorney general, for appellant.

*Linda M. Barnes-Pointer*, of Junction City, for appellee.

Before HILL, P.J., MALONE, J., and BUKATY, S.J.

MALONE, J.: Ernie Wayne Vanek was charged in Geary County District Court with felony driving under the influence of alcohol (DUI), a third offense, and related traffic infractions. The State filed this interlocutory appeal after the district court suppressed Vanek's statements during the traffic stop because Vanek was not *Mirandized* before questioning. See *Miranda v. Arizona*, 384 U.S. 436, 446, 16 L. Ed. 2d 694, 86 S. Ct. 1602, *reh. denied* 385 U.S. 890 (1966).

The facts are undisputed. At approximately 9 p.m., on September 8, 2006, Officer Dan Breci observed Vanek's vehicle straddle the double yellow line three different times while traveling at a

slow rate of speed on Ash Street in Junction City. Breci activated his patrol lights and stopped Vanek's vehicle. After exiting his patrol car, Breci told Vanek that he stopped him because he was weaving across the center line. Vanek provided his driver's license to Breci. Based on Vanek's mannerism, Breci asked Vanek if he had been drinking alcohol. Vanek replied, "I sure have been." In response to the next several questions, Vanek told Breci that he had just finished his last drink a minute before the stop, that he had been coming from Coach's bar, and that he had been drinking all day long.

Breci asked Vanek to exit his vehicle to perform multiple field sobriety tests. Breci also asked Vanek to take a preliminary breath test (PBT), but Vanek refused. Based upon Vanek's poor performance on the field sobriety tests, Breci placed Vanek under arrest for DUI. While Vanek was arrested and sitting in the back of the patrol car, Breci asked Vanek if there was any alcohol in the cup of dark liquid Breci found in Vanek's car. Vanek replied that the cup contained alcohol mixed with Coke. At no time during the encounter did Breci inform Vanek of his *Miranda* rights.

The State charged Vanek with felony DUI, improper driving on a roadway laned for traffic, and refusal to submit to a PBT. Prior to trial, the State filed a *Jackson v. Denno* motion to determine the voluntariness of Vanek's statements. See *Jackson v. Denno*, 378 U.S. 368, 12 L. Ed. 2d 908, 84 S. Ct. 1774 (1964). At the hearing, the State conceded that Vanek's statement after his arrest that the cup in his car contained alcohol mixed with Coke was inadmissible because Vanek had not been *Mirandized*. After a full evidentiary hearing, the district court suppressed all statements made by Vanek during the entire traffic stop because Breci never gave Vanek the *Miranda* warnings. The district court concluded that Vanek was not free to leave during the questioning; thus, Vanek "was in custody at the time the statements were made." The State filed this interlocutory appeal.

The State argues that Breci was not required to give Vanek *Miranda* warnings before asking him questions at the traffic stop because Breci's initial questioning did not constitute a custodial interrogation. Rather, according to the State, the questions came

during an investigatory detention where *Miranda* warnings are not required.

In reviewing a district court's decision regarding suppression of evidence, an appellate court reviews the factual underpinnings of the decision by a substantial competent evidence standard and the ultimate legal conclusion by a de novo standard with independent judgment. An appellate court does not reweigh evidence, pass on the credibility of witnesses, or resolve conflicts in the evidence. *State v. Ackward*, 281 Kan. 2, 8, 128 P.3d 382 (2006). When the material facts to the district court's decision on a motion to suppress evidence are not in dispute, the question of whether to suppress is a question of law over which an appellate court has unlimited review. *State v. Porting*, 281 Kan. 320, 324, 130 P.3d 1173 (2006).

The Fifth Amendment to the United States Constitution prevents any person from being compelled to be a witness against himself or herself in a criminal case. Section 10 of the Kansas Constitution Bill of Rights recognizes the same guarantee. *State v. Ninci*, 262 Kan. 21, 34, 936 P.2d 1364 (1997). The United States Supreme Court, in *Miranda*, 384 U.S. at 444, extended this privilege when it held that "the prosecution may not use statements, whether exculpatory or inculpatory, stemming from *custodial interrogation* of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." (Emphasis added.) Thus, officers must inform an individual accused of a crime that "he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed." 384 U.S. at 444.

*Miranda* involved four separate cases where law enforcement officers took the defendant into custody and interrogated the defendant in a police station for the purpose of obtaining a confession. The Court made it clear that its decision was only intended to apply to in-custody interrogation, and the decision was not intended to apply to general on-the-scene police questioning of a suspect in the fact-finding process. As stated by the Court in *Miranda*:

"Our decision is not intended to hamper the traditional function of police officers in investigating crime. [Citation omitted.] . . . General on-the-scene questioning as to facts surrounding a crime or other general questioning of citizens in the fact-finding process is not affected by our holding. . . . In such situations, the compelling atmosphere inherent in the process of in-custody interrogation is not necessarily present." 384 U.S. at 477-78.

Since *Miranda*, courts have recognized a distinction between a custodial interrogation and an investigatory interrogation. *State v. Jacques*, 270 Kan. 173, 185-86, 14 P.3d 409 (2000). A custodial interrogation is defined as "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his or her freedom of action in any significant way." 270 Kan. at 186 (quoting *Miranda*, 384 U.S. at 444). An investigatory interrogation is the questioning of a person by a law enforcement officer in a routine manner before the investigation has reached the accusatory stage and where the person is not in legal custody or deprived of his or her freedom in any significant way. 270 Kan. at 186. An objective standard is used to judge whether an interrogation is custodial or investigatory. *Miranda* safeguards are only required for custodial interrogations, but not for investigatory, noncustodial interrogations. 270 Kan. at 186.

Courts have also recognized that a "person can be seized without being under arrest, making the encounter an investigatory detention." *State v. Hill*, 281 Kan. 136, 142, 130 P.3d 1 (2006). Investigatory detentions, known as *Terry* stops, can occur when an officer reasonably suspects an individual is committing, has committed, or is about to commit a crime. *Terry v. Ohio*, 392 U.S. 1, 21, 20 L. Ed. 2d 889, 88 S. Ct. 1868 (1968). A seizure occurs if there is a show of authority which, in view of all the circumstances surrounding the incident, would communicate to a reasonable person that he or she is not free to leave. *State v. Morris*, 276 Kan. 11, 18-19, 72 P.3d 570 (2003). A traffic stop is considered a seizure. See *State v. McKeown*, 249 Kan. 506, 510, 819 P.2d 644 (1991).

On the other hand, a person is considered under arrest by a law enforcement officer when the person is physically restrained or otherwise deprived of his or her freedom of action in any significant way or when he or she submits to the officer's custody for the

purpose of answering for the commission of a crime. K.S.A. 22-2202(4); *Hill*, 281 Kan. at 143. The test for determining whether a person has been placed under arrest "is not based on the officer's subjective belief. Rather, the test for whether . . . an arrest has occurred is based on what a reasonable person would believe under the totality of the circumstances surrounding the incident. [Citation omitted.]" 281 Kan. at 145.

As the State points out, whether roadside questioning of a motorist during a traffic stop constitutes a custodial interrogation for purposes of triggering *Miranda* warnings has been addressed by courts in prior cases. In *Berkemer v. McCarty*, 468 U.S. 420, 82 L. Ed. 2d 317, 104 S. Ct. 3138 (1984), a case similar to the present facts, a highway patrolman observed the defendant's car weaving in and out of its lane of traffic. After following the car for 2 miles, the patrolman pulled the defendant over and asked him to get out of his car. The patrolman noticed that the defendant was having difficulty standing. At that point, the patrolman concluded that he would charge the defendant with some kind of traffic offense, but the patrolman did not immediately place the defendant under arrest.

During the traffic stop, the patrolman asked the defendant whether he had been using intoxicants. The defendant answered that " 'he had consumed two beers and had smoked several joints of marijuana a short time before.' " 468 U.S. at 423. The patrolman asked the defendant to perform a field sobriety test, which the defendant could not do without falling. Ultimately, the patrolman arrested the defendant and transported him to the county jail where the defendant was given an Intoxilyzer test and questioned further about his consumption of intoxicants. At no time was the defendant ever *Mirandized*. The district court denied the defendant's motion to suppress his statements, and the defendant was convicted of DUI.

On appeal, the Court held that the defendant's statements at the jail must be suppressed because he was subjected to a custodial interrogation without first being *Mirandized*. 468 U.S. at 434-35. However, regarding the defendant's statements during the traffic stop, the Court held that the defendant was not taken into custody

for purposes of *Miranda* until the patrolman arrested him; thus, his statements made prior to his arrest were admissible. 468 U.S. at 442. In reaching this decision, the Court distinguished routine law enforcement questioning during a traffic stop from custodial interrogation. The Court concluded that *Miranda* warnings were not required during a routine traffic stop because most people know that a traffic stop is ordinarily brief, and that at the conclusion of the stop the motorist will be free to leave. 468 U.S. at 439-40.

The Court in *Berkemer* further stated that the patrolman's intent to place the defendant into custody as soon as the defendant stepped from his vehicle was of no importance because the patrolman never communicated this intent to the defendant. "A policeman's unarticulated plan has no bearing on the question whether a suspect was 'in custody' at a particular time; the only relevant inquiry is how a reasonable man in the suspect's position would have understood his situation." 468 U.S. at 442. Finally, the Court concluded that unless a suspect has been "subjected to restraints comparable to those associated with a formal arrest," the suspect does not need to be *Mirandized* before law enforcement can ask the suspect questions. 468 U.S. at 441. Noting the subjective aspect of this test, the Court acknowledged that "lower courts will continue occasionally to have difficulty deciding exactly when a suspect has been taken into custody." 468 U.S. at 441.

In a Kansas case, *State v. Almond*, 15 Kan. App. 2d 585, 811 P.2d 529 (1991), the defendant was involved in a one-car accident and a police officer was dispatched to investigate. While the defendant was sitting in the patrol car, the officer noticed an odor of alcohol on the defendant's breath and the defendant's speech seemed impaired. Without giving *Miranda* warnings, the officer asked the defendant if he had been drinking. The defendant replied that he had consumed alcohol shortly before the accident. At that point, the defendant was arrested and taken to the police station. He was ultimately convicted of DUI.

On appeal, the defendant argued that his prearrest statement should have been suppressed because it was the product of a custodial interrogation. Relying on *Berkemer*, the court held that the police officer's prearrest inquiry of the motorist during the inves-

tigation of an accident did not rise to the level of a custodial interrogation which required the officer to give the *Miranda* warnings. 15 Kan. App. 2d at 586-87.

Based on *Berkemer* and *Almond*, it seems clear that Breci's roadside questioning of Vanek as to whether he had been drinking alcohol constituted an investigatory interrogation which did not require Breci to give Vanek the *Miranda* warnings. Nevertheless, Vanek asserts that his admission to drinking was the product of a custodial interrogation because at the time of the questioning, Breci was already focusing on whether Vanek had committed a crime and Vanek was not free to terminate the encounter and leave.

Vanek cites *State v. Fritschen*, 247 Kan. 592, 603, 802 P.2d 558 (1990), for the proposition that the standard to be used in Kansas for whether a person is in custody is the objective standard of a reasonable person. As the Kansas Supreme Court stated in *Fritschen*, there is no bright-line rule for determining when a person is in custody for purposes of whether *Miranda* warnings are required before questioning. The determination must be made on a case-by-case basis depending on the totality of the circumstances. 247 Kan. at 597, 603.

However, the Kansas Supreme Court has also stated that whether a person being interrogated was in custody is determined by looking at the following factors: (1) when and where the interrogation occurred; (2) how long it lasted; (3) how many police officers were present; (4) what the officers said and did; (5) the presence of actual physical restraint on the defendant or things equivalent to actual restraint such as drawn weapons or a guard stationed at the door; (6) whether the defendant was being questioned as a suspect or as a witness; (7) how the defendant got to the place of questioning, that is, whether he or she came completely on his or her own in response to a police request or was escorted by police officers; and (8) what happened after the interrogation—whether the defendant left freely, was detained, or was arrested. *Jacques*, 270 Kan. at 186.

In *State v. Jones*, 283 Kan. 186, 195, 151 P.3d 22 (2007), the court emphasized that it "has not slavishly adhered" to the eight

factors identified and used to determine whether an interrogation is custodial. Instead, the court indicated that two discrete inquiries are essential to the determination of whether an interrogation is custodial. First, what were the circumstances surrounding the interrogation? Second, under the totality of the circumstances, would a reasonable person have felt he or she was not at liberty to terminate the interrogation and leave? 283 Kan. at 193-94 (quoting *Thompson* v. *Keohane*, 516 U.S. 99, 112, 133 L. Ed. 2d 383, 116 S. Ct. 457 [1995]).

*Jones, Jacques,* and *Fritschen* are all distinguishable from Vanek's situation because these cases all involved controlled interviews of a suspect that occurred at a police station or at some location away from the crime scene. These cases did not involve on-the-scene questioning by a law enforcement officer investigating a crime prior to making an arrest. The eight factors used to determine whether an interrogation is custodial cannot be readily applied to on-the-scene questioning by a law enforcement officer.

Based on the above discussion of case law, certain rules can be adopted concerning when a law enforcement officer must *Mirandize* an individual during a lawful traffic stop. A law enforcement officer is not required to *Mirandize* an individual before asking routine investigatory questions where the individual is not in legal custody or deprived of his or her freedom in any significant way. This is true even though the officer suspects the individual may have committed a crime, and even though the individual is not free to leave during the lawful detention. However, a law enforcement officer is required to *Mirandize* an individual before questioning can continue once the individual is accused of a crime and has been arrested and taken into custody. These rules can be readily applied in most cases.

However, there may be unusual circumstances that can transform a routine traffic stop from an investigatory detention to a situation comparable to a formal arrest. Examples include instances where law enforcement officers have handcuffed the individual, drawn their weapons on the individual, or extended the duration of the stop for a protracted period of time. In these instances, whether questioning by a law enforcement officer constitutes a

custodial interrogation requiring *Miranda* warnings must be determined on a case-by-case basis, with the ultimate test being whether a reasonable person would believe he or she was in custody under the totality of the circumstances.

Returning to Vanek's arguments, he claims he was subjected to a custodial interrogation at the moment he was stopped because Breci's questions immediately focused on whether Vanek had committed a crime, in this case a DUI. But the same thing can be said for every law enforcement stop. A law enforcement officer is not permitted to stop a person unless the officer reasonably suspects the person is committing, has committed, or is about to commit a crime. K.S.A. 22-2402(1); *Terry*, 392 U.S. at 21. Consequently, questioning during most law enforcement stops is usually focused on discovering whether the suspect is, in fact, involved in the commission of a crime.

Vanek also argues that he was subjected to a custodial interrogation because from the moment his vehicle was stopped, he was no longer free to leave. However, it is too simplistic to say that Vanek's interrogation was custodial simply because a reasonable person would not have felt free to terminate the interrogation and leave. Whether a reasonable person would have felt free to leave is the test to determine when a person has been seized or detained. *Morris*, 276 Kan. at 18-19. This is not the test to determine when a person is in custody for *Miranda* purposes. A person who is lawfully seized or detained by a law enforcement officer is not free to leave or terminate the encounter. Clearly this fact alone does not make the encounter custodial for purposes of whether *Miranda* warnings are required before questioning. Otherwise, *Miranda* warnings would need to be the first words spoken by a law enforcement officer during any *Terry* stop.

We recognize that each law enforcement encounter with an individual is unique and must be resolved on a case-by-case basis. However, the district court's suppression of Vanek's prearrest statements in this case is clearly contrary to the generally recognized jurisprudence on when a custodial interrogation has occurred. Here, at the time Breci asked Vanek whether he had been drinking alcohol, Vanek was not in custody for *Miranda* purposes.

Although Vanek was not free to leave during the traffic stop, his initial detention in no way resembled that of a formal arrest. Vanek was not subjected to a custodial interrogation until after he was arrested.

We conclude that Breci, who was investigating Vanek for suspicion of DUI, was not required to *Mirandize* Vanek before asking him whether he had been drinking alcohol. Breci's initial questions were part of an investigatory interrogation and at that time Vanek was not in custody for *Miranda* purposes. The district court erred in suppressing statements made by Vanek prior to his arrest, and the case is remanded for further proceedings consistent with this opinion.

Reversed and remanded.