NOT DESIGNATED FOR PUBLICATION

No. 110,312

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee,*

v.

MAURICE SCOTT,
*Appellant*.


MEMORANDUM OPINION

Appeal from Geary District Court; MARITZA SEGARRA, judge. Opinion filed September 25, 2015.
Affirmed.

*Sam S. Kepfield*, of Hutchinson, and *Maurice Scott*, pro se, for appellant.

*Tony Cruz*, assistant county attorney, and *Derek Schmidt*, attorney general, for appellee.

Before PIERRON, P.J., BRUNS and SCHROEDER, JJ.

*Per Curiam*:  Maurice Scott appeals his jury trial convictions for possession of methamphetamine, marijuana, cocaine, and drug paraphernalia. On appeal, Scott raises the following five issues:  (1) There was insufficient evidence to support his convictions because he did not live in the house where the drugs were found; (2) the Kansas Bureau of Investigation (KBI) lab analysis report was improperly admitted; (3) the prosecutor committed misconduct; (4) the district court improperly denied his motion to suppress; and (5) all of this resulted in cumulative error. When the evidence is considered in the light most favorable to the State, we find there was sufficient evidence to support Scott's convictions and the trial resulted in no reversible error. We affirm.

1

On February 10, 2012, police officer Jason Waryan saw Scott driving away from the house at 917 South Garfield, Junction City (the Garfield House). After noticing the vehicle's windshield was cracked—a traffic infraction—Waryan conducted a traffic stop. Waryan subsequently confirmed Scott's driver's license was suspended and learned of an arrest and detain warrant issued by Scott's probation officer, David Quintanar, alleging Scott had failed to provide a home address as a condition of his probation.

Based on the warrant and Scott driving on a suspended license, Waryan arrested Scott and informed him Quintanar was on his way to the scene. Waryan detained Scott at the scene until Quintanar could arrive to verify Scott's address. While asking routine booking questions, Waryan asked Scott his address. Scott told Waryan his address was the Garfield House. Backup officers also arrived on the scene.

When Quintanar arrived, Waryan told him Scott provided the Garfield House address as his own. Upon questioning, Scott also admitted to Quintanar he was living at the Garfield House. Quintanar told Scott he wanted to conduct a search of the residence to confirm Scott was living there to verify compliance with his conditions of probation. Scott was told if the Garfield House was satisfactory, the arrest and detain warrant would be withdrawn. Scott was not given his *Miranda* rights by either Waryan or Quintanar.

Quintanar and police officers knocked on the door of the Garfield House. Sarah Sessin, Scott's girlfriend, answered the door. Quintanar asked Sessin for permission to enter to verify Scott lived there. She told them to "come on in." A search of the Garfield House revealed:

- Marijuana, marijuana roaches, and methamphetamine in the master bedroom;

- An open laptop with a cut straw on it in the master bedroom that tested positive for both methamphetamine and cocaine;

- Scott's identification card in the top dresser drawer in the master bedroom;

- A scale in the second dresser drawer in the master bedroom;

- Men's clothing and shoes in the master bedroom closet;

- A marijuana blunt and roaches in the laundry room; and

- A piece of Scott's mail in the laundry room.

The drug-related items were submitted to the KBI lab and tested positive for cocaine, marijuana, and methamphetamine.

Scott represented himself at trial. At the conclusion of trial, the jury convicted Scott of possession of methamphetamine, possession of drug paraphernalia, possession of marijuana, and possession of cocaine. Scott was sentenced and timely filed his notice of appeal. Additional facts are included below where necessary.

ANALYSIS

Our discussion of the various issues presented throughout this opinion are good examples of why a person charged with felony crimes should be represented by competent counsel.

*Where did Scott reside?*

When a verdict is challenged for insufficiency of the evidence, an appellate court does not reweigh evidence or pass on the credibility of the witnesses. If viewed in the light most favorable to the prevailing party, when the evidence supports the verdict, the

verdict will not be disturbed on appeal. See *Gannon v. State*, 298 Kan. 1107, 1175-76, 319 P.3d 1196 (2014).

Scott wants this court to reconsider the evidence presented to the jury:

- Scott's admission multiple times to officers that he lived at the Garfield House;
- The documents bearing Scott's name found in the Garfield House;
- The men's clothing found in the closet; and
- The financial affidavit on which Scott swore under oath his address was the Garfield House.

Scott admits he told officers he was residing at the Garfield House. However, he argues the ownership of the men's clothes found in the house was never established, there was a pill bottle with another man's name on it found in the house, the mail found in the Garfield House was addressed to Scott at a different location, and the fact the officers found his ID card in a dresser drawer did not establish that he "lived there on anything resembling a permanent basis." Scott challenges the sufficiency of the evidence establishing his "presence at [the Garfield House] to infer that he had possession of the drugs and the paraphernalia."

The State responds that a conviction for nonexclusive, constructive possession of methamphetamine, marijuana, cocaine, and drug paraphernalia was sufficient when considered by Scott's admission on three occasions that he lived at the Garfield House. Constructive possession was sufficiently shown based on the presence of drugs and paraphernalia in plain view in common areas of the house, including the master bedroom and laundry room.

4

The Kansas Supreme Court has "repeatedly declared that the law clearly allows a conviction of even the gravest offense to be based on circumstantial evidence. [Citation omitted.]" *State v. Aguirre*, 301 Kan. 950, 962-63, 349 P.3d 1245 (2015); see *State v. Beaver,* 41 Kan. App. 2d 124, 129, 200 P.3d 490 (2009) (nonexclusive possession may be proven by circumstantial evidence).

> "In order to establish a defendant's constructive possession of drugs, more than 'mere presence or access to the drugs' is required to sustain a conviction. *State v. Cruz*, 15 Kan. App. 2d 476, 489, 809 P.2d 1233[, *rev. denied* 249 Kan. 777 (1991)]. The State must prove 'other incriminating circumstances linking the defendant to the drugs.' [*State v.*] *Anthony*, 242 Kan. [493,] 502[, 749 P.2d 37 (1988)]. Factors establishing a defendant's possession of the drugs include the following: '[a] defendant's proximity to the area where the drugs were found, the fact that they were in plain view, the proximity of his belongings to the drugs, and his previous participation in the sale of drugs.' *Anthony*, 242 Kan. at 502-03. Additional factors include defendant's incriminating statements and suspicious behavior. *State v. Boggs*, 287 Kan. 298, 317, 197 P.3d 441 (2008). These factors, when taken together, are sufficient to support an inference of possession. *Anthony*, 242 Kan. at 503." *Beaver*, 41 Kan. App. 2d at 129.

When viewed in the light most favorable to the prosecution, a reasonable jury could find Scott was guilty beyond a reasonable doubt of possession of cocaine, methamphetamine, marijuana, and paraphernalia. The evidence reflects:

- Upon KBI analysis, the substances tested positive for marijuana, methamphetamine, and cocaine;
- Scott told Waryan he lived at the Garfield House;
- Upon Quintanar's arrival at the traffic stop, Scott told him he resided at the Garfield House;
- Scott provided the Garfield House as his address on his financial affidavit sworn to under oath;
- Scott's ID card was found in a dresser drawer of the master bedroom;

5

- Scott's mail was found in the laundry room; and
- When officers knocked on the door and asked Sessin to search the home to determine whether Scott lived there and if the home complied with Scott's parole conditions, she allowed them in.

This evidence, when viewed in the light most favorable to the State, was sufficient to support the jury's conviction.

*Was the KBI lab report admissible?*

When a court's consideration of the admissibility of evidence requires application of statutory rules controlling the admission and exclusion of certain types of evidence, these statutory rules are applied as a matter of law or in the exercise of the trial court's discretion, depending on the applicable rule. *State v. Bowen*, 299 Kan. 339, 348, 323 P.3d 853 (2014). An appellate court must apply the statutory law on evidence as it was at the time of the challenged evidentiary ruling. *State v. Hart*, 297 Kan. 494, 510, 301 P.3d 1279 (2013).

An appellate court exercises unlimited review of a challenge to the adequacy of the legal basis of a trial court's decision to admit or exclude evidence. *Bowen*, 299 Kan. at 349. When the question of whether the trial court complied with specific statutory requirements for admitting evidence requires interpretation of a statute, appellate review is also unlimited. *State v. Stafford*, 296 Kan. 25, 47, 290 P.3d 562 (2012).

K.S.A. 2014 Supp. 22-3437 governs the admissibility of KBI lab reports. Subsection (a)(1) provides: "[A] report concerning forensic examinations and certificate of forensic examination executed pursuant to this section shall be admissible in evidence if the report and certificate are prepared and attested by a criminalist or other employee of the [KBI]" or other approved laboratory.

Our Supreme Court addressed K.S.A. 22-3437 at length in *State v. Laturner*, 289 Kan. 727, 743-51, 218 P.3d 23 (2009), finding a portion of K.S.A. 22-3437 unconstitutional in any case where the right of confrontation arose under the Sixth Amendment to the United States Constitution. The court severed that portion in such cases, and what remains of the provision in cases where the right of confrontation arises is as follows:

"Whenever a party intends to proffer in a criminal or civil proceeding, a certificate executed pursuant to this section, notice of an intent to proffer that certificate and the reports relating to the analysis in question, including a copy of the certificate, shall be conveyed to the opposing party or parties at least 21 days before the beginning of a hearing where the proffer will be used. *An opposing party who intends to object to the admission into evidence of a certificate shall give notice of objection* and the grounds for the objection within 14 days upon receiving the adversary's notice of intent to proffer the certificate. [Third and fourth sentences are severed and deleted.] *A failure to comply with the time limitations regarding the notice of objection required by this section shall constitute a waiver of any objections to the admission of the certificate.* The time limitations set forth in this section may be extended upon a showing of good cause." [Emphasis added.] K.S.A. 2014 Supp. 22-3437(a)(3); see also *Laturner*, 289 Kan at 752-53.

The *Laturner* court also discussed a defendant's burden to preserve a constitutional challenge relevant to the remaining portion of K.S.A. 22-3437. The court recognized "the general rule that 'a timely and specific objection for the admission of evidence is necessary to preserve the issue for appeal. See K.S.A. 60-404.'" 289 Kan. at 752.

Here, Scott argues the trial court violated his rights under the Sixth Amendment to the United States Constitution because it admitted the KBI's forensic lab report and certificate, which revealed the substances found at the Garfield House tested positive for illegal drugs, without requiring the lab technician who performed the testing, Brad Crow, to testify. Scott fails to specify whether the trial court lacked an adequate basis to admit

7

the lab report or failed to comply with the specific statutory requirements for admitting the lab report. Regardless, appellate review is unlimited.

On May 2, 2012, the State filed its notice of intent to proffer a certificate of forensic examination as required by K.S.A. 2014 Supp. 22-3437(a)(3). The State attached the KBI lab report to its notice of intent. The record on appeal reflects Scott failed to file an objection to the notice of intent. Additionally, Scott does not argue that he filed an objection. At trial, Scott first objected to Mark Roberts' testimony regarding the results of the KBI lab report—Roberts had not performed the tests. The trial court overruled the objection, noting that the State had filed its proffer, but "[t]he objection was not filed in sufficient time as directed by law." Scott later objected to the admission of the KBI lab report. Scott claimed "it wasn't submitted by him, it was submitted by somebody else. I don't know who this man. [*sic*] He's not here to testify. So everything on this document would be hearsay." The trial court overruled his objection. Since the State complied with the notice of intent requirement in K.S.A. 2014 Supp. 22-3437, and Scott failed to file a timely objection within 14 days of receipt of the State's notice, the KBI lab report was admissible. The district court did not err in granting its admission.

*Did the prosecutor commit reversible error?*

Scott claims the prosecutor committed misconduct warranting reversal because: (1) The prosecutor knowingly introduced perjured testimony because Quintanar testified inconsistently and (2) the prosecutor introduced a copy of Scott's financial affidavit "over objection."

A contemporaneous objection must be made to all evidentiary claims—including questions posed by a prosecutor and responses to those questions—to preserve the issue for appellate review. *State v. Raskie*, 293 Kan. 906, 914, 269 P.3d 1268 (2012).  A trial court has a duty under K.S.A. 2014 Supp. 60-261 to prevent the occurrence of

8

prosecutorial error or actions that rise to the level of violating a defendant's right to a fair trial. *State v. Holmes*, 272 Kan. 491, 498, 33 P.3d 856 (2001). However, a defendant cannot bootstrap an evidentiary claim into a claim of prosecutorial error without a contemporaneous objection. *State v. Cook*, 286 Kan. 1098, 1112, 191 P.3d 294 (2008).

Despite Scott's claim he contemporaneously objected to the admission of his financial affidavit and Quintanar's testimony, the record reveals otherwise. Without a contemporaneous objection, Scott's claims are being asserted for the first time on appeal and are subject to the general rule that issues cannot be raised for the first time on appeal. See Supreme Court Rule 6.02(a)(5) (2014 Kan. Ct. R. Annot. 41) ("If the issue was not raised below, there must be an explanation why the issue is properly before the court."); *State v. Kelly*, 298 Kan. 965, 971, 318 P.3d 987 (2014). While appellate courts generally refrain from reviewing issues raised for the first time on appeal, courts have made exceptions in limited circumstances. See *State v. Phillips*, 299 Kan. 479, 493, 325 P.3d 1095 (2014). However, the Kansas Supreme Court requires the appellant to affirmatively invoke and argue an exception to the general rule, in satisfaction of Supreme Court Rule 6.02(a)(5). *State v. Godfrey*, 301 Kan. 1041, 1043, 350 P.3d 1068 (2015) ("Rule 6.02(a)(5) means what it says and is ignored at a litigant's own peril."). Because Scott failed to contemporaneously object or to satisfy Supreme Court Rule 6.02(a)(5), he abandoned his claims of prosecutorial error. Even if he had not abandoned the issue, Scott's claims are meritless.

Scott challenges the admission of his financial affidavit into evidence. We find it was properly admitted. Scott cites to no Kansas authority indicating the prosecutor was prohibited from admitting the relevant, probative financial affidavit sworn to under oath as evidence the Garfield House was where Scott was living. See *State v. Carr*, 300 Kan. 1, 200, 331 P.3d 544 (2014) (generally, all relevant evidence is admissible.) The document was relevant evidence for the jury's consideration of where Scott said he lived.

Scott also alleges the inconsistencies in witness testimony. We find those inconsistencies are minor and certainly do not compel the conclusion that the prosecutor was the proponent of false testimony. Rather, the inconsistencies go to the credibility of the witness, which is an issue for the jury to decide. See *State v. Green*, 280 Kan. 758, 761, 127 P.3d 241 (2006); *State v. Dailey*, No. 102,957, 2011 WL 5833288, at *18 (Kan. App. 2011) (unpublished opinion), *rev. denied* 296 Kan. 1132 (2013). Scott has failed to demonstrate the prosecution committed any error in the way he presented the testimony of Quintanar.

*Was Scott's motion to suppress improperly denied?*

Scott appears to be challenging the denial of his motion to suppress, but his specific challenge is difficult to understand. Scott filed at least eight motions challenging the admission of evidence and testimony at trial. On appeal, Scott fails to identify which motion or motions he claims the trial court erred in denying. Scott's brief does not cite to the record; therefore, Scott's brief does not comply with Supreme Court Rule 6.02(a)(4) (2014 Kan. Ct. R. Annot. 40) (appellant must cite to the record.). The Kansas Supreme Court has declined to address a defendant's appellate argument when the defendant fails to "develop the record below or, at least, cite to the record." *State v. Reed*, 300 Kan. 494, 513, 332 P.3d 172 (2014). Because Scott failed to develop a record establishing how the district court erred in denying his motion to suppress, we find the undeveloped argument waived and abandoned. See *State v. Llamas*, 298 Kan. 246, 264, 311 P.3d 399 (2013) (a point raised incidentally in a brief and not argued therein is also deemed abandoned).

Even if Scott had clarified his specific challenge, it would fail. When the trial court has denied a motion to suppress, the moving party must object to the introduction of that evidence at the time it was offered at trial to preserve the issue for appeal. *State v. McCaslin*, 291 Kan. 697, 726, 245 P.3d 1030 (2011), *overruled on other grounds State v. Astorga*, 299 Kan. 395, 402, 324 P.3d 1046 (2014). In his brief, Scott discusses the

testimony of Waryan and his dissatisfaction with the fact he was not read his *Miranda* warnings, but Scott did not object to Waryan's testimony at trial. Scott did not renew his motions until after Waryan had testified. Therefore, Scott failed to preserve his claim for appellate review.

Scott bases his argument on the theory that both Waryan and Quintanar failed to read him his *Miranda* rights. At the time of Scott's initial interview during the traffic stop, Waryan had no duty to read Scott his *Miranda* rights. Since *Miranda*, courts have recognized a distinction between a custodial interrogation and an investigatory interrogation. *State v. Jacques*, 270 Kan. 173, 185-86, 14 P.3d 409 (2000). A custodial interrogation is defined as "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his or her freedom of action in any significant way." 270 Kan. at 186 (quoting *Miranda v. Arizona*, 384 U.S. 436, 444, 86 S. Ct. 1602, 16 L. Ed. 2d 694 [1966]). However, *Miranda* warnings are not required during an investigatory interrogation if the questioning by a law enforcement officer is routine and before the investigation has reached the accusatory stage. *Jacques*, 270 Kan. at 186. Additionally, Scott claims parole officers in Kansas must read a parolee *Miranda* warnings if investigating a new felony. *State v. Hartfield*, 245 Kan. 431, 436, 781 P.2d 1050 (1989), *superseded by statute on other grounds State v. Vontress*, 266 Kan. 248, 970 P.2d 42 (1998); see *State v. Schroeder*, No. 90,011, 2004 WL 117340, at *2 (Kan. App.) (unpublished opinion), *rev. denied* 277 Kan. 927 (2004).

Scott has not demonstrated *Miranda* warnings were required under either standard. Waryan's questions to Scott about his address were for background information and, at the time the questions were asked, did not amount to a custodial "interrogation" warranting *Miranda* warnings. See *State v. Ewing*, 258 Kan. 398, 408, 904 P.2d 962 (1995) (requesting a person's name and address constitutes an investigatory interrogation); *State v. Vanek*, 39 Kan. App. 2d 529, 533, 180 P.3d 1087 (2008). Further, Scott's probation officer was only attempting to verify Scott's address and was not

investigating a new felony. We also note that a probationer has no right to a *Miranda* warning from a probation officer, and the probationer has no Fifth Amendment privilege not to answer incriminating questions if the information is used solely for management of the probation conditions. See *Minnesota v. Murphy*, 465 U.S. 420, 435 n.7, 104 S. Ct. 1136, 79 L. Ed. 2d 409 (1984); *State v. D'Armond*, No. 110,030, 2014 WL 2590053, at *4 (Kan. App. 2014) (unpublished opinion), *rev. denied* ___ Kan. ___ (May 12, 2015). Therefore, neither Waryan or Quintanar were required to read Scott his *Miranda* rights. There was no violation of Scott's *Miranda* rights. The district court correctly denied Scott's motion to suppress.

*Was there cumulative error?*

Finally, Scott contends he was prejudiced by cumulative errors warranting the reversal of his conviction. However, an appellate court will find no cumulative error when the record fails to support the errors the defendant raises on appeal. *State v. Betancourt*, 299 Kan. 131, 147, 322 P.3d 353 (2014). Because Scott failed to demonstrate any error, there is no cumulative error.

Affirmed.