NOT DESIGNATED FOR PUBLICATION

No. 118,488

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

BRANDON C. CORBIN,
*Appellant*.

MEMORANDUM OPINION

Appeal from Douglas District Court; SALLY D. POKORNY, judge. Opinion filed December 14, 2018. Affirmed.

*Randall L. Hodgkinson*, of Kansas Appellate Defender Office, for appellant.

*Kate Duncan Butler*, assistant district attorney, *Charles E. Branson*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before SCHROEDER, P.J., STANDRIDGE, J., and WALKER, S.J.

PER CURIAM: After responding to a suspicious activity call, officers found Brandon C. Corbin sleeping in his car outside a Taco Bell restaurant. When Corbin opened his door to talk to the officers, one officer saw a syringe in Corbin's car. In response to a question, Corbin told the officer he used syringes to inject methamphetamine. Officers searched Corbin and his car and found marijuana, methamphetamine, and drug paraphernalia. Corbin moved to suppress all evidence, arguing his *Miranda* rights were violated. At a combined motions hearing and bench trial, the district court denied his motion and convicted Corbin on all counts. Corbin appeals,

1

arguing the district court erred in denying his motion to suppress. Finding no error, we affirm.

FACTS

In the early morning hours of January 28, 2015, Officers Ryan Douglas and Ryan Padilla responded to a suspicious activity call from a Taco Bell in Lawrence, Kansas. Taco Bell employees had reported that a car had been sitting in the parking lot for several hours. Because the Taco Bell was about to close, the employees were nervous about going to their cars.

When the officers arrived, they saw a white car with no license plate backed into a parking stall. The officers each parked their patrol cars in an adjacent parking lot and walked over to the white car. Douglas approached the driver's side, and Padilla approached the passenger side.

A man and a woman sat in the reclined front seats and appeared to be sleeping. Douglas knocked on the window and woke up the driver, Corbin. When Corbin opened the door, Douglas saw a syringe sticking out of a small ashtray near the driver's side door as well as the top of a plastic baggie sticking out from underneath a cigarette pack.

Corbin told Douglas that he and his passenger, Amber Miller, were sleeping there after eating food from Taco Bell. Douglas wanted to determine if the syringe had been used for a medical purpose or to inject illegal narcotics, so he asked Corbin if he was diabetic. Corbin said he was not. Douglas then asked what the syringe was used for, and Corbin replied methamphetamine.

Padilla told Douglas that he had also seen a syringe on the floorboard under Miller's foot on the passenger side. At that point, Douglas asked Corbin to step out of the

2

car so Douglas could search him. Douglas found two pipes and a bag of methamphetamine in Corbin's pockets.

While Douglas was searching Corbin, Padilla asked Miller to step out of the car. Padilla then searched the car and found a bag of marijuana. He also removed the syringes, which both had a clear liquid in them. The liquid later tested positive for methamphetamine.

After the searches, Douglas took Corbin to his patrol car and read him his *Miranda* rights. Corbin responded he understood his rights. He then admitted to Douglas that the methamphetamine was his and Miller's.

The State charged Corbin with possession of methamphetamine, marijuana, and drug paraphernalia. Before trial, Corbin moved to suppress the evidence discovered on his person and in his car, as well as his statements to Douglas. He argued that the officers exceeded the scope of the original detention when they asked about the syringes in the car.

At a combination motions hearing and bench trial, Douglas testified that when he and Padilla arrived at the Taco Bell, they did not have their lights on. Douglas did shine his flashlight into Corbin's car after he reached the driver's side, but neither officer ever took out a gun. He acknowledged he was unsure of what he would discover based on the suspicious activity call, but he would not have let Corbin leave after he saw the syringes.

The district court ultimately denied Corbin's motion. The court found that Douglas' questions about the syringe were not a custodial interrogation but part of an investigatory detention. The court alternatively found that the officers had probable cause to search the car even without Corbin's statements.

The district court found Corbin guilty on all counts. The court sentenced Corbin to a controlling term of 12 months' probation with an underlying prison sentence of 15 months. Corbin has timely appealed the district court's denial of his motion to suppress.

ANALYSIS

On appeal, Corbin argues that Officer Douglas violated his rights by asking about the syringe without first administering *Miranda* warnings. He contends Douglas' questions amounted to a custodial interrogation. As a result, Corbin asserts his statements could not be used to support the warrantless search of himself and his car.

The State responds that Corbin was not in custody at the time of the questioning. Instead, the State argues Douglas' questions were part of an investigatory interrogation. Because Corbin was not in custody, the State reasons, Douglas did not have to give *Miranda* warnings before eliciting incriminating statements from Corbin.

The Fifth Amendment to the United States Constitution and § 10 of the Kansas Constitution Bill of Rights guarantee the right against self-incrimination, including the right to remain silent and the right to have a lawyer present during a custodial interrogation. *Miranda v. Arizona*, 384 U.S. 436, 479, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966); *State v. Aguirre*, 301 Kan. 950, 954, 349 P.3d 1245 (2015). Law enforcement must give *Miranda* warnings to those who are in custody and subject to interrogation. *State v. Lewis*, 299 Kan. 828, 834, 326 P.3d 387 (2014). A custodial interrogation is "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his or her freedom in any significant way." 299 Kan. at 834. In contrast, an investigatory interrogation "occurs as a routine part of the fact-finding process before the investigation reaches the accusatory stage." 299 Kan. at 835.

4

We use a two-part inquiry to review the district court's determination as to whether an interrogation was custodial. First, we apply a substantial competent evidence standard to review the district court's fact findings regarding the circumstances of the interrogation. In doing this review, we do not reweigh evidence, resolve conflicting evidence, or redetermine witness credibility. Second, we utilize a de novo standard of review to determine whether, under the totality of the circumstances, a reasonable person would have felt free to end the interrogation and leave. *Lewis*, 299 Kan. at 835.

The parties do not dispute that Douglas interrogated Corbin. Nor do the parties dispute the underlying facts. Thus, the only question we must answer is whether, under the totality of the circumstances, Corbin was in custody at the time of the interrogation.

Kansas courts have identified several factors as relevant to determining whether an interrogation is investigative or custodial:  (1) the time and place of the interrogation; (2) the duration of the interrogation; (3) the number of police officers present; (4) the conduct of the officers and the person subject to the interrogation; (5) the presence or absence of actual physical restraint or its functional equivalent, such as drawn firearms or a stationed guard; (6) whether the person is being questioned as a suspect or a witness; (7) whether the person being questioned was escorted by the police to the interrogation location or arrived under his or her own power; and (8) the result of the interrogation, for instance, whether the person was allowed to leave, was detained further, or was arrested after the interrogation. No one factor outweighs another, nor do the factors bear equal weight. Courts must analyze each case on its own particular facts. *Lewis*, 299 Kan. at 835.

In his brief, Corbin also cites several factors the Tenth Circuit uses in its analysis of whether, under the totality of the circumstances, an individual is in custody. These factors include (1) whether the atmosphere was police-dominated, (2) the tone and manner of questioning, (3) the separation of an individual from sources of moral support,

and (4) whether officers informed the individual that he or she may refuse to answer questions or end the encounter. See *United States v. Ortega*, 379 F. Supp. 2d 1177, 1186 (D. Kan. 2005) (citing Tenth Circuit caselaw).

After considering the totality of the circumstances, we conclude Corbin was not in custody when Douglas questioned him. While the interrogation did take place around 3 a.m., Corbin was in a neutral location—sitting in his car in a Taco Bell parking lot. "Generally, other things being equal, a person questioned in familiar, or at least neutral, surroundings does not face the same pressures as one questioned in a police-dominated atmosphere and this factor weighs against a conclusion that an interview was custodial." *State v. Warrior*, 294 Kan. 484, 497, 277 P.3d 1111 (2012). Corbin also appears to have arrived there by his own volition, and the officers did not move him to another location.

Douglas testified that he spoke with Corbin "for some time." But Douglas appears to have asked only a series of basic investigatory questions, including what Corbin was doing in the parking lot, whether he was diabetic, and what he had used the syringe for. The record also does not show Douglas' demeanor during the questioning, but he testified he was trying to determine whether the syringe had been used for a lawful or unlawful purpose. We believe this colloquy falls within the "limited questioning to confirm an officer's suspicions" allowed during investigatory interrogations. See *Ortega*, 379 F. Supp. 2d at 1186.

In his brief, Corbin points out that the officers were responding to a suspicious activity call. They also saw that Corbin's car had no license plate, a possible misdemeanor. See K.S.A. 2017 Supp. 8-142. And Douglas testified that once he saw the syringe, he was not going to let Corbin leave. But this all relates to Douglas' state of mind at the time of the questioning. And an officer's subjective belief does not determine whether someone is under arrest. *State v. Vanek*, 39 Kan. App. 2d 529, 534, 180 P.3d

6

1087 (2008) ("test for determining whether a person has been placed under arrest 'is not based on the officer's subjective belief'").

As for the number of officers, two were present at the time of questioning. The Kansas Supreme Court has found that two officers present while conducting an interrogation in a hospital room suggested neither that the interview was custodial nor investigatory. *Warrior*, 294 Kan. at 498. This fact thus carries little weight in support of a finding that Corbin was in custody at the time of the questioning.

As for the conduct of the officers, Douglas and Padilla were both in uniform, and they each drove their own patrol cars. But neither officer had their lights on. And they both parked in another parking lot. There is no indication that Corbin's vehicle was blocked in any way.

Corbin points out that Douglas and Padilla interviewed him and Miller separately. He argues this effectively separated him from a source of moral support. See *Ortega*, 379 F. Supp. at 1186. But at the time when Douglas initially questioned Corbin, both he and Miller were still inside Corbin's car. So while Corbin and Miller may have been speaking with the officers separately, they were still close to each other and could easily communicate.

Corbin also asserts that Douglas never told him he was free to go or could refrain from answering questions. He adds that the officers' mere presence blocked any possible exit for Corbin or Miller, amounting to a custodial atmosphere. But the relevant inquiry here is not whether the officers seized Corbin. Instead, as Corbin notes, the issue is "whether a reasonable person in [Corbin's] position would 'believe [his] freedom of action had been curtailed to a "degree associated with formal arrest."'" See *Ortega*, 379 F. Supp. 2d at 1185; see also *State v. Hill*, 281 Kan. 136, 142, 130 P.3d 1 (2006) ("A person can be seized without being under arrest, making the encounter an investigatory

7

detention."). While the officers may have impeded any possible exit from the car, they did not draw their weapons, put Corbin in handcuffs, or place him in a patrol car before questioning him. Corbin's detention thus did not resemble formal arrest.

Looking at the totality of the circumstances, we conclude that Corbin was not in custody when Officer Douglas asked him about the syringe. Corbin was subject to a brief interview in a Taco Bell parking lot. Douglas' questions aimed to determine whether a crime had been committed. And Douglas did not physically restrain Corbin in a way resembling formal arrest.

Because Corbin's *Miranda* rights were not violated, we need not determine whether Douglas had probable cause to search Corbin and his car absent Corbin's statements. Corbin's responses to Douglas' questions provided an ample basis for a full search of the vehicle and seizure of the drugs and drug-related paraphernalia within it.

Affirmed.