No. 101,744

WILLIAM P. SMITH, *Appellant*, v. KANSAS DEPARTMENT OF
REVENUE, *Appellee*.
(242 P.3d 1179)

Opinion filed November 19, 2010.

*Daniel C. Walter*, of Ryan, Walter & McClymont, Chtd, of Norton, argued the cause and was on the brief for appellant.

*John D. Shultz*, of Legal Services Bureau, Kansas Department of Revenue, argued the cause, and *James G. Keller*, of the same office, was on the brief for appellee.

The opinion of the court was delivered by

BILES, J.: William P. Smith appeals from an administrative action by the Kansas Department of Revenue suspending his driving privileges for 1 year following his arrest for driving under the influence of alcohol (DUI). Smith later was convicted of DUI, and that conviction was affirmed on appeal. *State v. Smith*, No. 101,831, unpublished Court of Appeals opinion filed December 18, 2009.

In this appeal from the agency's action suspending his license, Smith challenges whether there were reasonable grounds to support the administration of an evidentiary breath test. He also attacks the constitutionality of K.S.A. 2009 Supp. 8-1012, which authorizes a preliminary breath test based on reasonable suspicion, rather than the higher probable cause standard. We affirm the district court's order upholding the agency's action.

FACTUAL AND PROCEDURAL BACKGROUND

At approximately 9 p.m. on July 24, 2007, Smith was driving a pickup truck, pulling a combine header trailer. The taillights on the trailer were not working. A Kansas Highway Patrol trooper observed the faulty lights and initiated a traffic stop. There was nothing out of the ordinary regarding Smith's reaction to the stop or the manner in which he pulled over his vehicle.

After stopping, but before the trooper made contact, Smith exited his vehicle and attempted to fix the trailer lights. The trooper simultaneously exited his patrol vehicle, but he stayed at the trailer's rear to see if Smith's efforts to fix the trailer lights worked. When those efforts failed, the trooper approached him. Nothing out of the ordinary occurred while Smith attempted to fix his trailer.

The trooper later testified that he detected a strong alcohol odor surrounding Smith. He also noted Smith's eyes were bloodshot and watery. The trooper obtained Smith's driver's license. He then asked Smith to sit in the patrol car while he issued a warning for the equipment violation. Once in the patrol car, the trooper asked Smith if he had been drinking alcohol that evening. Smith answered either a "few" or "three or four" and that he had quit drinking approximately 30 minutes before.

Both men exited the patrol car and walked to Smith's truck where the trooper again smelled alcohol. The trooper searched the truck. Smith does not challenge this search as illegal. During the search, the trooper found a beer bottle cap on the center console, an open beer bottle containing a small amount of liquid on the floor beside the right rear door, and a full can of beer in a rear seat cup holder. The record does not disclose whether the can was open or sealed.

After searching the truck, they returned to the patrol car. While in the vehicle, the trooper administered two prefield sobriety tests. He asked Smith to recite his ABC's from "D" to "S" and to count backwards from 63 to 47. Smith correctly recited the alphabet, but he missed one number, which he self-corrected.

The trooper asked Smith to perform two field sobriety tests. Smith agreed. The trooper first administered the walk-and-turn test. While performing this test, Smith exhibited two clues. He stepped off the line once, and he took an incorrect number of steps. Smith said he had a bad knee. The second test administered was the one-leg stand. Smith hopped during part of the test, which was one clue. Exhibiting one clue during the test is considered a pass.

The trooper next asked Smith to take a preliminary breath test (PBT). Smith agreed. The required protocol was followed. Smith failed the PBT with a result over .08, but the actual result was not recorded. At that time, the trooper arrested Smith, and he was transported to the Norton County Sheriff's Office, where Smith was tested on the Intoxilyzer 5000. The required protocol for administering the evidentiary breath test was followed. Smith's breath sample yielded a .099. At the conclusion of the test, the trooper read Smith the *Miranda* warnings, and Smith said he did not wish to answer any questions. The contact with Smith ended. The trooper completed a form certifying Smith's failure of the breath test. He indicated the following facts established his belief there were reasonable grounds to believe Smith was under the influence: (1) odor of alcoholic beverages surrounding Smith; (2) alcoholic beverage containers found in Smith's vehicle; (3) Smith failed the sobriety tests; (4) Smith had bloodshot eyes; (5) Smith stated he

had consumed alcohol; and (6) Smith failed the preliminary breath test.

After an administrative hearing, the Department of Revenue issued an administrative order suspending Smith's driving privileges for 1 year. Smith timely filed a petition for review with the district court. The parties agreed the four issues were: (1) Did the arresting officer lack probable cause to arrest Smith and lack reasonable grounds to believe Smith had been operating a motor vehicle while under the influence of alcohol, drugs, or both? (2) Is K.S.A. 2009 Supp. 8-1012 unconstitutional because it allows for seizure of deep lung air based on reasonable suspicion grounds as opposed to probable cause? (3) Were the results of Smith's breath-alcohol test inadmissible because he was subjected to custodial interrogation without benefit of *Miranda* warnings? and (4) Did the hearing officer erroneously apply the law to the facts?

Based on the transcript from the administrative hearing, the district court affirmed the agency's action on each issue and upheld the suspension. Smith filed a notice of appeal, essentially raising the same four issues. We transferred the case to this court. Our jurisdiction comes under K.S.A. 20-3018(c) (transfer on court's own motion).

### REASONABLE GROUNDS SUPPORTED THE EVIDENTIARY BREATH TEST

A law enforcement officer is required to request a person submit to one or more tests of the person's blood, breath, urine, or other bodily substance to determine the presence of alcohol or drugs if the officer has "reasonable grounds" to believe the person was operating or attempting to operate a vehicle while under the influence. K.S.A. 2009 Supp. 8-1001. The question we address in this case is whether there were reasonable grounds to believe Smith had been operating his vehicle under the influence to support the trooper's request to administer an evidentiary breath test. In this context, the issue as to whether an officer has reasonable grounds to believe someone is operating or attempting to operate a vehicle while DUI is strongly related to whether that officer had probable cause to arrest. *Bruch v. Kansas Dept. of Revenue*, 282 Kan. 764,

775, 148 P.3d 538 (2006). This court has found the term "reasonable grounds" synonymous in meaning with "probable cause," but in doing so has noted an officer may have reasonable grounds to believe a person is operating a vehicle under the influence sufficient to request a test under the statute—but not have the probable cause required to make an arrest under K.S.A. 8-1001. 282 Kan. at 776.

Smith incrementally challenges some of the evidence used to support the trooper's determination that reasonable grounds existed. First, Smith argues there were additional facts negating any determination of reasonable grounds. Second, Smith claims his admissions to the trooper that he had been drinking should have been excluded from this determination because he was not advised of his *Miranda* rights before he made the incriminating statements. Third, Smith claims the PBT evidence should have been excluded because K.S.A. 2009 Supp. 8-1012, which is the statute authorizing such tests, is unconstitutional because it requires only an officer's "reasonable suspicion" to believe the person sought to be tested has been operating a vehicle under the influence, instead of the higher probable cause standard. Finally, and predicated upon his presumed success on the first three contentions, Smith argues that without the admissions about drinking and the PBT, there were no reasonable grounds under K.S.A. 2009 Supp. 8-1001(b) to justify his arrest and evidentiary breath test.

*Standard of Review*

Following a district court's trial de novo, this court reviews the district court's determination to suspend a license for substantial competent evidence. *Bruch,* 282 Kan. at 772. Substantial competent evidence is "such legal and relevant evidence as a reasonable person might accept as being sufficient to support a conclusion." *Drach v. Bruce,* 281 Kan. 1058, Syl. ¶ 2, 136 P.3d 390 (2006), *cert. denied* 549 U.S. 1278 (2007). Whether substantial competent evidence exists is a question of law. *Redd v. Kansas Truck Center,* 291 Kan. 176, 182, 239 P.3d 66 (2010).

*Discussion*

This court must determine whether there were reasonable grounds, *i.e.*, probable cause, to support the trooper's decision to request the evidentiary breath test. Probable cause exists where the officer's knowledge of the surrounding facts and circumstances creates a reasonable belief that the defendant committed a specific crime. Probable cause does not require an officer have evidence of every element of the crime. *State v. Fewell*, 286 Kan. 370, 377-78, 184 P.3d 903 (2008) (citing *Draper v. United States*, 358 U.S. 307, 311-12, 3 L. Ed. 2d 327, 79 S. Ct. 329 [1959]; *State v. Abbott*, 277 Kan. 161, 164, 83 P.3d 794 [2004]; *State v. Aikins*, 261 Kan. 346, 355, 932 P.2d 408 [1997].) Probable cause is determined by evaluating the totality of the circumstances. *Fewell*, 286 Kan. at 377 (citing *Illinois v. Gates*, 462 U.S. 213, 230-31, 76 L. Ed. 2d 527, 103 S. Ct. 2317, *reh. denied* 463 U.S. 1237 [1983]).

Here, the district court found Smith's arrest and subsequent evidentiary breath testing were supported by a number of factors: (1) The trooper smelled alcohol during his initial contact with Smith; (2) the trooper observed Smith's bloodshot and watery eyes; (3) Smith admitted to having a few drinks that evening; (4) Smith admitted that his last drink was approximately 30 minutes earlier; (5) the trooper smelled alcohol wafting from Smith's truck; (6) the trooper viewed an open container in Smith's truck; (7) Smith committed an error during the prefield sobriety test; (8) Smith presented two clues on the walk-and-turn field sobriety test; (9) Smith presented one clue on the one-leg stand field sobriety test; and (10) Smith failed the PBT.

Smith counters that this does not amount to probable cause because: (1) He recited the alphabet properly during the first prefield test; (2) he counted backwards in a generally acceptable manner during the second prefield test; (3) his reaction time to the initial lights and sirens was appropriate; and (4) he did not exhibit any balance or motor skill issues throughout the stop. While these assertions are, for the most part, true, they hardly diminish the other clues exhibited. We do not find these facts negate the others in the determination as to whether the trooper should have requested the PBT or the evidentiary breath test at the station.

Next, we consider Smith's claims that some of the facts the trooper relied upon were unlawfully obtained. Specifically, Smith challenges his admissions to drinking and the constitutionality of the PBT. Smith argues this evidence should be disregarded. Addressing first Smith's admissions about drinking, he argues the trooper was required to issue *Miranda* warnings before asking him any questions regarding his alcohol consumption that evening.

The Fifth Amendment to the United States Constitution and § 10 of the Kansas Constitution Bill of Rights prevent any person from being compelled to be a witness against himself or herself in a criminal case. *State v. Ninci,* 262 Kan. 21, 34, 936 P.2d 1364 (1997). As is well known, in *Miranda v. Arizona,* 384 U.S. 436, 444, 16 L. Ed. 2d 694, 86 S. Ct. 1602, *reh. denied* 385 U.S. 890 (1966), the United States Supreme Court expanded the rights protecting citizens from self-incrimination by holding: "[T]he prosecution may not use statements, whether exculpatory or inculpatory, stemming from *custodial interrogation* of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." (Emphasis added.) But the police are not required to administer *Miranda* warnings to everyone questioned. Warnings are required only before a custodial interrogation occurs. *State v. Jones,* 283 Kan. 186, 192-93, 151 P.3d 22 (2007) (quoting *Oregon v. Mathiason,* 429 U.S. 492, 495, 50 L. Ed. 2d 714, 97 S. Ct. 711 [1977]).

To determine whether Smith's contention is accurate, we must first decide whether Smith was in custody when interrogated. This is a question over which an appellate court has de novo review. *Jones,* 283 Kan. at 192.

The United States Supreme Court has held that in most circumstances persons temporarily detained during a routine traffic stop are not "in custody" for the purposes of *Miranda. Berkemer v. McCarty,* 468 U.S. 420, 440, 82 L. Ed. 2d 317, 104 S. Ct. 3138 (1984). The *Berkemer* Court provided two reasons for concluding persons detained in a traffic stop are usually not in custody. First, the Court acknowledged a traffic stop restricts a motorist's freedom, but found it is distinguishable from the stationhouse interrogations the *Miranda* Court had in mind because the traffic stop

is brief in nature. See 468 U.S. at 436-38. Second, the Court found the public nature of traffic stops was sufficient protection against potential illegal police conduct. 468 U.S. at 438-39. Based on those conclusions, the Court found traffic stops were more analogous to "*Terry* stops," resulting from the case of *Terry v. Ohio*, 392 U.S. 1, 29, 20 L. Ed. 2d 889, 88 S. Ct. 1868 (1968), than custodial interrogations. This is true even though the officer may suspect the individual has committed, is committing, or is about to commit a crime and even though the individual is not free to leave during a lawful detention. *Berkemer*, 468 U.S. at 439.

But the Supreme Court declined to adopt a bright-line rule that *Miranda* warnings are never required before questioning a suspect during a traffic stop because exceptional circumstances may arise where a suspect's freedom of action is curtailed to a " 'degree associated with formal arrest.' " 468 U.S. at 440. In those circumstances that render the traffic stop suspect " 'in custody,' " *Miranda* warnings are still required. 468 U.S. at 440; see also *Standish v. Department of Revenue*, 235 Kan. 900, 904, 683 P.2d 1276 (1984) (citing *Berkemer*).

There is also no bright-line rule for determining when a person is in custody for the purposes of *Miranda*. See *State v. Fritschen*, 247 Kan. 592, 600-03, 802 P.2d 558 (1990). An objective standard is employed, and the proper analysis is how a reasonable person in the suspect's position would have understood the situation. *State v. Hebert*, 277 Kan. 61, 68, 82 P.3d 470 (2004). But the *Berkemer* Court's analysis and the facts in that case provide some guidance.

In *Berkemer*, the defendant was pulled over because a trooper observed the defendant's car weaving in and out of its lane. After asking the defendant to step out of his vehicle, the trooper observed the defendant having difficulty standing. At that time, the trooper knew he would charge the defendant with a traffic offense of some kind, but he did not arrest the defendant. Instead, the trooper asked the defendant whether he had consumed any intoxicants, to which the defendant gave an incriminating response. Further, the defendant's speech was slurred, and the trooper had difficulty understanding him. The trooper formally arrested the defendant. The *Berkemer* Court found the trooper's question re-

garding the defendant's consumption of intoxicants did not qualify as a custodial interrogation and, thus, *Miranda* warnings were not required. 468 U.S. at 441-42.

Smith's circumstances are nearly indistinguishable from those in *Berkemer*. One difference is that Smith was seated in the patrol car when questioned and Berkemer was not. As the Court of Appeals noted in Smith's criminal appeal, there are instances when a defendant is in custody and the patrol car serves as a " ' "temporary jail." ' " *State v. Smith*, No. 101,831, unpublished opinion filed December 18, 2009, slip op. at 6-7 (quoting *State v. Timley*, 25 Kan. App. 2d 779, 781, 975 P.2d 264 (1998), *rev. denied* 266 Kan. 1115 [1999]). But that was not the case here. Prior Kansas courts have held that a defendant was not in custody despite being seated within a patrol car. *State v. Price*, 233 Kan. 706, Syl. ¶¶ 5-6, 664 P.2d 869 (1983); *State v. Almond*, 15 Kan. App. 2d 585, Syl. ¶¶ 1-2, 811 P.2d 529 (1991). As such, this difference is not significant enough to distinguish it from *Berkemer*. The *Berkemer* Court's analysis still applies here. The questioning occurred while Smith was waiting for the trooper to issue a warning ticket for a taillight infraction. The trooper had smelled alcohol, observed Smith's bloodshot and watery eyes. He asked a limited number of questions regarding if Smith had been drinking and when Smith had his last drink. This inquiry did not prolong the encounter. This court has held that "general on-the-scene questioning of citizens in the fact-finding process does not constitute custodial interrogation requiring a Miranda warning." *Price*, 233 Kan. 706, Syl. ¶ 5. The trooper's questioning of Smith was not a custodial interrogation requiring *Miranda* warnings.

With this determination made, we recap for convenience the facts existing at the time the trooper requested the PBT pursuant to K.S.A. 2009 Supp. 8-1012(b). They were: (1) smelling alcohol upon his initial contact with Smith; (2) observing Smith had bloodshot and watery eyes; (3) Smith's admission to having a few drinks that evening; (4) Smith's admission that his last drink was approximately 30 minutes before his contact with the trooper; (5) the smell of alcohol wafting from Smith's truck; (6) viewing an open container in Smith's truck; (7) Smith's difficulty with a prefield

sobriety test; (8) Smith presenting two clues on the walk-and-turn field sobriety test; and (9) Smith presenting one clue on the one-leg-stand field sobriety test.

We find these facts sufficiently strong to establish probable cause to proceed with a PBT, even if the statute authorizing it only requires an officer's reasonable suspicion to administer the test. The trooper's knowledge of these facts and circumstances certainly created a reasonable belief that Smith was operating his vehicle under the influence of alcohol. Accordingly, we find this case does not require us to consider Smith's constitutional argument. See *Wilson v. Sebelius*, 276 Kan. 87, 91, 72 P.3d 553 (2003) ("Appellate courts generally avoid making unnecessary constitutional decisions. Thus, where there is a valid alternative ground for relief, an appellate court need not reach constitutional challenges to statutes").

This conclusion necessarily leads to our final determination that reasonable grounds supported Smith's arrest and the requested evidentiary breath test. The same facts support both. The district court properly upheld the agency's decision to suspend Smith's driving privileges.

Affirmed.

DAVIS, C.J., not participating.