NOT DESIGNATED FOR PUBLICATION

No. 118,504

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

KRISTA JACKSON,
*Appellee*,

v.

KANSAS DEPARTMENT OF REVENUE,
*Appellant*.

MEMORANDUM OPINION

Appeal from Bourbon District Court; MARK ALAN WARD, judge. Opinion filed July 27, 2018.
Affirmed.

*Adam D. King*, of Kansas Department of Revenue, for appellant.

*Geoffrey Clark*, of Mason & Clark, LLC, of Fort Scott, for appellee.

Before ARNOLD-BURGER, C.J., POWELL and GARDNER, JJ.

PER CURIAM: Before suspending a person's driver's license for an alcohol test failure, a police officer must certify that he or she had reasonable grounds to believe that the person was operating a vehicle while under the influence of alcohol. K.S.A. 2017 Supp. 8-1002(a)(1). Officer Jared Lyden stopped Krista Jackson for speeding. He did not observe any other traffic infractions or indications that she was under the influence of alcohol while driving. Once he stopped her, he noted that she smelled like alcohol, admitted to having a couple of beers earlier in the night, and had an open case of beer in her back seat which was missing a couple of cans. However, she did not slur her speech, she produced her driver's license without fumbling, and she got out of her car and walked

1

without difficulty. After Jackson refused to submit to a preliminary breath test (PBT), Lyden arrested her and her driver's license was ultimately suspended for failing a breath test. The district court held that Lyden did not possess reasonable grounds to request an evidentiary breath test. While the facts demonstrate that Jackson consumed alcohol, we find that substantial competent evidence supports the district court's finding that the officer did not have reasonable grounds to believe she was under the influence of alcohol to the extent that she could not safely operate her vehicle. Accordingly, we affirm.

FACTUAL AND PROCEDURAL HISTORY

Officer Lyden observed Jackson speeding on Highway 69 shortly after midnight on November 27, 2016. He followed her for a couple of miles, but did not observe any other traffic violations. Jackson did not have any difficulty pulling her vehicle to the side of the highway. As Lyden walked up to Jackson's car, he saw an open case of Coors Light beer sitting on the floorboard behind the passenger seat. Lyden thought it looked like two cans were missing from the case. There were no empty cans in the vehicle. Jackson did not fumble when handing her driver's license to Lyden. Lyden observed that Jackson had glassy, bloodshot eyes. Lyden asked Jackson if she had been drinking, and she said she had consumed a couple of beers earlier in the night. Lyden could smell alcohol on Jackson's breath, but she was not slurring her speech.

After observing the case of beer, Jackson's eyes, the odor of alcohol, and Jackson's admission to drinking, Lyden asked her to get out of the vehicle. Lyden testified that at this point the purpose of the stop shifted from a traffic stop to a driving while under the influence (DUI) investigation. Jackson did not have trouble getting out of her car and she did not stagger or stumble when she walked.

Lyden asked Jackson to perform the walk-and-turn test on the fog-line of the highway. The highway's speed limit was 65 miles per hour, and cars were driving by

2

during the test. It was cold and breezy that night. Jackson was facing the oncoming traffic, and one car almost hit her which caused her to back off of the line. During the test, Jackson did not step off of the line but she did miss the heel to toe several times. Overall she had three of eight clues on the test. Lyden then asked Jackson to do a one-legged stand. He thought that she swayed during the test, but otherwise performed it properly. Following the sobriety tests, Lyden asked Jackson to submit to a preliminary breath test (PBT). Jackson refused. Lyden arrested Jackson and administered a breath test. Jackson failed the test and the Kansas Department of Revenue (KDOR) suspended her license.

Jackson appealed the administrative ruling to the district court. Lyden was the only person to testify at the trial. In addition to hearing Lyden's testimony, the district court watched a video of the stop and arrest. At the close of the case, the district court reviewed the evidence. The district court judge stated that he was not giving any weight to the field sobriety tests, due to the conditions at the time. The judge noted that if he had been standing on the highway at night with cars driving by, he would not have been able to do the tests. The judge also stated that he was not concerned with Jackson's glassy eyes, noting that Lyden testified that glassy eyes could have other causes like allergies. The factors the court explicitly considered were the case of beer with two cans missing, the odor of alcohol on Jackson's breath, and Jackson's admission that she had consumed a couple of drinks. The court held that these factors did not provide Lyden with reasonable grounds to believe that Jackson was operating her vehicle under the influence of alcohol, and accordingly Lyden did not have probable cause to arrest her and request an evidentiary breath test.

The KDOR appealed. Jackson cross-appealed regarding the exclusion of evidence related to Lyden's credibility and reputation for honesty. However, she never filed a brief arguing the merits of her cross-appeal, so we deem it abandoned.

ANALYSIS

The KDOR argues that the district court erred in holding that Lyden did not have reasonable grounds to suspect that Jackson was operating her vehicle under the influence of alcohol.

*Our standard of review is substantial competent evidence.*

The standard of review in driver's license suspension cases is twofold. First, the district court's factual determinations are reviewed for substantial competent evidence. *Smith v. Kansas Dept. of Revenue*, 291 Kan. 510, 514, 242 P.3d 1179 (2010). Substantial evidence is evidence which possesses both relevance and substance and which provides a substantial basis of fact from which the issues can reasonably be resolved. *Wiles v. American Family Assurance Co.*, 302 Kan. 66, 73, 350 P.3d 1071 (2015). This court does not reweigh evidence, make witness credibility determinations, or redetermine factual questions. *Mitchell v. Kansas Dept. of Revenue*, 32 Kan. App. 2d 298, 301, 81 P.3d 1258 (2004). Second, whether substantial competent evidence exists is a question of law which is reviewed de novo. *Smith*, 291 Kan. at 514.

*Police must have reasonable grounds to believe that a driver was operating a vehicle while under the influence of alcohol to request an evidentiary breath test.*

Before suspending a person's driver's license for alcohol test failure, a police officer must certify that he or she had reasonable grounds to believe that the person was operating a vehicle while under the influence of alcohol. K.S.A. 2017 Supp. 8-1002(a)(1). Reasonable grounds are akin to probable cause. *Smith*, 291 Kan. at 515. The Kansas Supreme Court has defined probable cause as follows:

"Probable cause is the reasonable belief that a specific crime has been or is being committed and that the defendant committed the crime. Existence of probable cause must be determined by consideration of the information and fair inferences therefrom, known to the officer at the time of the arrest. Probable cause is determined by evaluating the totality of the circumstances. As in other totality of the circumstance tests, there is no rigid application of factors and courts should not merely count the facts or factors that support one side of the determination or the other. [Citations omitted.]" *Allen v. Kansas Dept. of Revenue*, 292 Kan. 653, 656-57, 256 P.3d 845 (2011).

*The district court based its decision on the totality of the circumstances.*

KDOR first argues that the district court's decision was not based on the totality of the circumstances. It asserts that the district court "explicitly noted that it was reaching its legal conclusion about the existence of reasonable grounds only on three factors: the case with missing beer cans, the smell of alcohol and Jackson's admission to drinking." The KDOR argues that the district court failed to consider the fact that Jackson was stopped late at night, she was speeding, and she refused a PBT. We do not reach the same conclusion.

During closing arguments, the district court judge asked Jackson's attorney whether Lyden had probable cause to arrest Jackson for DUI. The court asked specifically about two factors—the missing beer cans and the odor of alcohol. Jackson's attorney argued why those did not amount to probable cause. The court then stated:

"What I'm looking at on the probable cause to arrest for a DUI, in this case, based on these facts, I'm looking at the two beer cans being missing.
. . . .
". . . The smell of an alcoholic beverage, and an admission by your client that perhaps she had drank some beer a few hours earlier."

5

The court then listened to arguments from the KDOR attorney, who mentioned the lateness of the stop, the speeding infraction, and Jackson's refusal to submit to a PBT. While the district court did not mention these factors in its holding, it did not state that it was not considering them. The court also did not explicitly mention factors that would cut against a probable cause finding, such as the fact that Jackson did not slur her speech, fumble her driver's license while handing it over, or have difficulty walking. This is in contrast to the court's explicit statements that it was not considering the field sobriety tests, and that it did not think the glassy, bloodshot eyes supported probable cause. The State did not object to this alleged inadequacy. "When no objection is made to the adequacy of the district court's findings, we can presume the district court found all facts necessary to support its judgment." *State v. Dern*, 303 Kan. 384, 394, 362 P.3d 566 (2015). Working from this premise, we will proceed to examine the district court's findings in more detail, to determine if they are supported by substantial competent evidence.

*The district court's decision was supported by substantial competent evidence.*

Because this court is required to review the totality of the circumstances to determine whether there were reasonable grounds for Lyden to request Jackson take an evidentiary breath test, we will examine the evidence as it was presented. See *State v. Jones*, 300 Kan. 630, 645, 333 P.3d 886 (2014) ("Because of the requirement that a court consider the totality of the circumstances, all facts and inferences, not a select few, must be considered.").

We start by noting that although it is tempting to do as the parties suggest and review various decisions of our appellate courts to determine if these facts are more like cases where the police were found to have lacked reasonable grounds versus cases where the police were found to possess reasonable grounds to request further testing, each case is very fact intensive. See, e.g., *Sloop v. Kansas Dept. of Revenue*, 296 Kan. 13, 23, 290

6

P.3d 555 (2012) (faulty tag light, odor of alcohol, bloodshot and watery eyes, and admission to drinking not reasonable grounds); *Campbell v. Kansas Dept. of Revenue*, 25 Kan. App. 2d 430, 431-32, 962 P.2d 1150 (1998) (speeding at 1:10 a.m., smelling of liquor, admitting to the consumption of alcohol, and having glazed and blood shot eyes equaled reasonable grounds). It is dangerous to try to establish any bright-line rules regarding what evidence supports or detracts from a finding without examining the whole trial in context. Whether evidence was introduced regarding a particular fact is not necessarily dispositive. A judge must still determine the weight and credibility to be given to that evidence. A complete review of the trial is needed to determine not only what evidence was introduced, but how that evidence was tested by direct or cross-examination during trial, and what credibility determinations were made by the district court. Not all evidence, in the end, is created equal. Simply because a police officer testifies that he or she relied on certain cues to indicate intoxication, does not mean that the court is required to accept the officer's conclusion without critical analysis. We expect our judges to exercise independent judgement with regard to conclusions to be drawn from the facts presented. Likewise, on appellate review, this court does not reweigh evidence, make witness credibility determinations, or redetermine factual questions. *Mitchell*, 32 Kan. App. 2d at 301. That is the exclusive realm of the trial judge. So we will examine the evidence as it was presented and challenged.

According to Lyden's testimony, the relevant factors for his probable cause determination were Jackson's speeding, her admission to drinking, the missing beer cans, bloodshot and glassy eyes, the odor of alcohol, her nervousness and failure to maintain eye contact, failure of the walk-and-turn test, and her refusal to submit to a PBT. In addition, the prosecutor argued the lateness of the hour was a factor, although the officer never testified that the hour had any bearing on his decision to request a breath test. Accordingly, we will not consider it since Lyden didn't.

7

In our examination of the totality of the circumstances, we also look at what factors would weigh against a probable cause determination. Jackson did not drive erratically or commit any traffic infractions other than speeding. She pulled her car over properly. She did not fumble when she handed her driver's license to Lyden, nor exhibit difficulty getting out of her car or walking or communicating with him in any way. She did not slur her words. Her car was properly registered. Her license and insurance were in order. Finally, we note that both this court and the district court had the additional benefit of viewing the dash cam videotape of the stop and subsequent arrest.

To determine if the district court's decision was supported by substantial competent evidence we will begin with an examination of the factors Lyden relied upon.

*The speeding violation*

There was no testimony presented about the circumstances of the speeding violation, including the speed alleged. The officer did not write Jackson a ticket for it. In addition, upon questioning from Jackson's counsel, the officer admitted that under the National Highway Traffic Safety Administration (NHTSA) guidelines, speeding is not an indicator of intoxication, although weaving, going 10 miles below the speed limit, swerving, and drifting are indicators. None of these indicators were displayed by Jackson. Lyden testified that before he spoke with Jackson, he had no reason to believe she was intoxicated.

The district court clearly did not assign much weight, if any, to Jackson's speeding as the district court judge did not list it in his analysis of facts supporting probable cause. This was reasonable because in the 2 miles that Lyden followed Jackson he did not see her swerve, weave, or engage in any sort of erratic driving. She was also able to pull over to the side of the road without difficulty. Even if speeding did indicate driving under the influence, Jackson was a good driver in all other respects.

8

*Glassy and bloodshot eyes*

Turning to Jackson's glassy and bloodshot eyes, Lyden admitted that, based on NHTSA studies regarding what qualifies as visual indicators of DUI, bloodshot and glassy eyes were removed as an indicator that officers should consider in 1997. Lyden testified that many things other than intoxication could cause bloodshot or glassy eyes. Lyden admitted that NHTSA is the "expert[] in these things, and they say which indicators you should look for in DUI detection." The NHTSA manuals were admitted without objection.

Given this testimony, the district court gave no weight to this factor. KDOR does not appear to challenge that finding. Although we agree with KDOR that many cases from our appellate courts have cited bloodshot and watery eyes as an indicator of intoxication, we have no idea whether contrary evidence of the nature that was offered here was presented for consideration in those cases. Because we do not reweigh the evidence and the district court did not give this factor any weight—a decision that seems reasonable given the evidence presented—we do not either.

*Nervousness and failure to maintain eye contact*

As to Jackson's nervousness and failure to maintain eye contact, again the officer admitted that the NHTSA guidelines do not list nervousness and failure to maintain eye contact as indicators of intoxication. Moreover, he agreed that they were not indicators of anything and could be due to a variety of reasons, including shyness. So even though Lyden listed it as a factor, he quickly abandoned it.

9

*Field sobriety tests*

There was no dispute during trial that it was cold and windy outside when Jackson was stopped and that the tests were performed on the fog line of a four-lane highway. There were no street lights illuminating the area. The dangerousness of the situation to both Jackson and Lyden was apparent from the dash cam video. On occasion cars almost hit Lyden and caused Jackson to step away from the traffic. Lyden also agreed that the scoring for NHTSA tests was based on tests performed under laboratory conditions, not those presented that night. In addition, the differences between Jackson's performance on the test as seen in the dash cam video and Lyden's testimony concerning her performance were aggressively challenged through questioning by Jackson's attorney.

The district court gave no weight to the field sobriety test results. In other words, the manner in which the field sobriety tests were performed rendered the results suspect. This was a credibility determination that does not appear unreasonable in light of the testimony provided. Moreover, KDOR does not contest the district court's finding on this issue.

*Refusal to submit to a PBT*

There was conflicting evidence regarding whether the officer took Jackson's refusal to submit to a PBT into account in arresting Jackson. Lyden admitted that he testified at the administrative hearing on the matter that Jackson "was going to jail whether she took the PBT or not." He doubled down on that statement at trial. So the clear question was whether the refusal to take the PBT could have been a factor in the formation of his reasonable grounds to request an evidentiary breath test when he testified it made no difference to him whether she took it or not, he was still going to arrest her.

10

But even despite this conflict, this court has held that "a law enforcement officer may draw a negative inference from a driver's refusal to take a preliminary breath test." *Forrest v. Kansas Dept. of Revenue*, No. 115,532, 2017 WL 2399475, at *2 (Kan. App. 2017) (unpublished opinion). This is because "refusal amounts to circumstantial evidence the driver knows he or she has been drinking and likely is sufficiently intoxicated that he or she will fail the test." 2017 WL 2399475, at *2. However, in cases where PBT refusal was considered it was not a decisive factor in the reasonable grounds/probable cause analysis.

For example, in *Chambers v. Kansas Dept. of Revenue*, No. 115,141, 2017 WL 1035442 (Kan. App. 2017) (unpublished opinion), Officer Steven Duckworth followed a truck matching a description from a report of a domestic dispute. The report advised that the suspect may be intoxicated. Duckworth did not observe any signs of intoxication in the truck's driver, but pulled it over for having a defective tag light. Shawn Chambers was driving the truck. Chambers smelled like alcohol, and admitted to having a couple of beers. Duckworth also thought his eyes looked watery and bloodshot. Chambers did not slur his speech, have difficulty getting out of his truck, or exhibit any balance or coordination issues. Chambers refused to take a PBT, and Duckworth arrested him. The KDOR suspended Chambers' driver's license for failure to submit to an evidentiary breath test. A panel of this court noted that it considered Chambers' PBT refusal as a factor in the reasonable grounds analysis. But, it noted that "[i]n previous cases in which this court found probable cause to arrest and the driver refused testing . . . there were generally other indicators of intoxication." 2017 WL 1035442, at *7. The court concluded that while there was evidence that Chambers consumed alcohol, there was no indication that Chambers had an illegal amount of alcohol in his blood. 2017 WL 1035442, at *8; see also *Wilkerson v. Kansas Dept. of Revenue*, No. 113,058, 2015 WL 6457801, at *3-4 (Kan. App. 2015) (unpublished opinion) (holding that an officer had reasonable grounds to request evidentiary breath test where driver was in a collision with another car, smelled

11

like alcohol, had bloodshot eyes, slow physical movements, and refused to submit to a PBT).

This case is similar to *Chambers*—the evidence establishes that Jackson consumed alcohol, but not to such a level that the levels of alcohol in her blood would be illegal. While she was speeding, she was not driving erratically and had no difficulty pulling over. She smelled like alcohol, admitted to consuming a couple of beers, and two beers were missing from the case in her back seat, but there was no evidence that her consumption led to illegal levels of intoxication. Her speech was not slurred and she did not have trouble exiting her car or moving. Lyden could permissibly draw a negative inference from her PBT refusal, as could the court, but without additional signs of intoxication it was not unreasonable to conclude that the inference does not rise to the level of reasonable grounds to believe that Jackson was illegally under the influence of alcohol.

*Admission of drinking, odor of alcohol, and opened box of Coors Light*

So once the district court judge considered the weight and credibility of all the evidence, the only remaining indicators of intoxication that the court found to be credible were the admission of drinking, the odor of alcohol, and the opened box of Coors Light.

There is no dispute that Jackson admitted she had a couple beers several hours earlier in the evening. As to the odor of alcohol, there was no indication of whether it was faint, strong, or something else. The testimony only supports a finding that the odor of alcohol was detected when Jackson was in the car and when she stepped out of the car. In addition, the district judge specifically found that he believed the officer when Lyden said that he saw a box of Coors Light beer that was open with a couple cans missing behind the passenger's seat. But there were no open containers or empties in the car to indicate recent consumption.

12

The facts here certainly establish that Jackson likely consumed alcohol. But consuming alcohol is not a crime. Lyden was required to have reasonable grounds to believe that Jackson was "under the influence of alcohol to a degree that render[ed] [her] incapable of safely driving a vehicle" or that her blood alcohol concentration was .08 or higher. K.S.A. 2017 Supp. 8-1567(a). The odor of alcohol on Jackson's breath, the open case of beer, and her admission to drinking show only that she consumed alcohol. While consumption is a necessary precursor to driving under the influence, consumption alone cannot provide probable cause for arrest.

Based on the totality of the credible and reliable evidence submitted, the district judge found that Lyden did not have reasonable grounds to believe that Jackson was operating her vehicle under the influence of alcohol or drugs to the extent she could not safely operate the vehicle. So, he lacked sufficient evidence to request an evidentiary breath test. Accordingly, the district judge reinstated Jackson's driving privileges. Likewise, based upon our standard of review, and based on the totality of the evidence presented, we find that the district court's decision was supported by substantial competent evidence and affirm it.

Affirmed.