NOT DESIGNATED FOR PUBLICATION

No. 120,357

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

KARA D. MURRAY,
*Appellant*,

v.

KANSAS DEPARTMENT OF REVENUE,
*Appellee*.

MEMORANDUM OPINION

Appeal from Dickinson District Court; RYAN W. ROSAUER, judge. Opinion filed February 14, 2020. Affirmed.

*Charles Ault-Duell*, of CAD Law, LC, of Salina, for appellant.

*Ted E. Smith*, of Legal Services Bureau, Kansas Department of Revenue, for appellee.

Before BUSER, P.J., SCHROEDER and WARNER, JJ.

PER CURIAM: Kara Murray appeals the district court's decision affirming the administrative suspension of her driver's license under K.S.A. 2017 Supp. 8-1001 after she refused to submit to a breath test. Murray acknowledges she was intoxicated during the encounter and that someone had driven her Jeep aggressively on I-70 shortly before the officers arrived. But she claims the deputy who requested the breath test did not have reasonable grounds to believe she was the driver. We conclude the district court's finding that Murray had been driving the Jeep is supported by substantial competent evidence and thus affirm the suspension of her license.

1

## FACTUAL AND PROCEDURAL BACKGROUND

In December 2017, the Dickinson County Sheriff's Department received a 911 call reporting an aggressive driver on eastbound I-70. The caller reported the offending vehicle was a white Jeep with a black top, explaining the Jeep had cut drivers off and had almost caused a wreck between the caller and another truck driver. The caller indicated the Jeep took the Fair Road exit. The caller referred to the Jeep's driver as "he" several times and once as "that person"; dispatch never confirmed whether the caller knew the gender of the driver or was using "he" in a general sense.

Dispatch reported information about the aggressive Jeep to Deputy Brian Schantz of the Dickinson County Sheriff's Department but provided no information regarding the gender of the driver. About 10 minutes after receiving this information, Schantz found a white Jeep with a black top legally parked off of Fair Road in an entrance to a farm field. Schantz approached the Jeep, which was running but not in gear. He found Murray in the driver's seat and Kevin Christensen in the passenger's seat. Schantz noticed an open bottle of Fireball whiskey on the Jeep's dash and a 12-pack of beer on the floorboard. Soon after arriving, two other sheriff's deputies joined Schantz at the scene.

Schantz asked who had been driving the Jeep. And although Murray was in the driver's seat of the Jeep—which she owned—she informed the deputy she had not been driving. Schantz asked who the driver was, and Murray responded: "[T]here's two people here. . . . You can do the math." Schantz then requested Murray's driver's license and asked her to get out of the Jeep so she could perform field sobriety testing, but she refused. Murray was obstinate and uncooperative throughout the encounter. She later testified she thought the deputy's requests for her driver's license and to perform field sobriety testing were "frivolous" because she had disclaimed being the driver.

2

The encounter between Murray and the deputies lasted about 15 minutes. During that time, Murray admitted several times to drinking that evening. The dashcam video from the deputy's patrol car confirms this fact: In the video, Murray appears notably intoxicated—slurring her words, having difficulty understanding the deputies, and failing to keep her balance. As one example, the deputies had difficulty removing Murray from the Jeep and had to repeat their request multiple times; Murray asked, "What do you want me to do?" and then asked, "Do you have a lighter so I can smoke?" Murray told the deputies: "I wasn't even driving . . . I just took over that position."

Murray resumed her demands for a cigarette and informed the officers it was illegal for them to be harassing her. Deputy Schantz asked Murray to perform field sobriety tests, to which she responded: "What are you . . . gonna do . . . when I pass your tests . . . you're gonna be a bitch about it." Murray never produced her license—the officers found it in her purse after they eventually got her out of the vehicle. And she never performed the field sobriety testing—before finishing the first test, she hit one of the officers and was arrested.

After Murray's arrest, Schantz asked if she would submit to a breath test; Murray refused. Schantz then filled out a DC-27, certifying Murray's refusal and notifying her of the suspension of her license. Schantz never witnessed Murray driving or attempting to drive the Jeep during the encounter.

Murray requested an administrative hearing. Because Schantz certified Murray's refusal of the breath test, the scope of the hearing was limited to whether Murray could demonstrate that Schantz lacked reasonable grounds to believe she was operating or attempting to operate the Jeep while under the influence of alcohol. See K.S.A. 2017 Supp. 8-1020(h)(1)(A). The administrative law judge found Murray had not met this burden and upheld the suspension of her license.

Murray then filed a petition for judicial review in Dickinson County District Court. During an evidentiary hearing, Murray testified that she and Christensen were returning from Topeka that evening and that Christensen had been driving. Murray stated she had asked Christensen to pull over because she needed to use the bathroom, and they stopped off Fair Road so she could do so. According to Murray's testimony, Christensen left the Jeep running and moved to the passenger seat while she was relieving herself. Under this recital of the events, Deputy Schantz apparently arrived just after Murray had finished urinating and sat down in the driver's seat. Christensen did not testify. At the close of the hearing, the court took the matter under advisement.

The district court later issued an opinion affirming the suspension of Murray's license. The court stated the primary dispute, which remains central before this court, was whether Murray was the driver of the Jeep. The court indicated there were several bases for its finding that Murray had not demonstrated she was merely a passenger:

- "Deputy Schantz knew at the time he approached the jeep that barely ten minutes before it had been on I-70 driving dangerously, and he had reason to believe that the person behind the wheel then was the same person who was behind the wheel ten minutes before."

- Although Murray claimed to have stopped to use the bathroom (and for some unexplained reason she and Christensen then switched places), the court found "her going to the bathroom would have had to have happened just minutes, if not seconds, before Deputy Schantz arrived." The court noted, after observing the dashcam video, that Murray had "difficulty walking smoothly and keeping her balance" and also had difficulty getting out of the Jeep when the deputy arrived— making it unlikely that she could have exited the vehicle, relieved herself, and gotten back into the Jeep before her encounter with the deputy.

4

- The court found that Murray owned the Jeep and that it was unlikely she would have allowed Christensen to drive when she met him only the day before.

- The court observed that "after the officers finally got Ms. Murray to start the sobriety test, she requested to use a bathroom. She even went so far as to ask the officers if there was a video of the interaction so that she could say on the video that she had requested to use the bathroom before starting the testing."

- And after she punched the officer, she was again "insistent on using the bathroom, and had she just used it like she claimed to during her testimony, the court doubts she would have been that insistent."

Based on these observations and the other evidence and testimony presented, the district court found Murray had been driving the vehicle and thus affirmed the suspension of her driver's license under K.S.A. 2017 Supp. 8-1001. Murray appeals.

DISCUSSION

Murray asserts two claims on appeal: (1) that Deputy Schantz lacked probable cause to arrest her for violating K.S.A. 2017 Supp. 8-1567(a) (driving under the influence) and (2) that the deputy did not have reasonable grounds to ask her to submit to a breath test under K.S.A. 2017 Supp. 8-1001(b). Murray does not dispute she was intoxicated. Instead, both her claims turn on whether Schantz had reasonable grounds—equivalent to probable cause for purposes of the DUI statute—to believe she had been driving or attempting to operate the Jeep. If the officer had reasonable grounds to believe Murray was the driver, Murray's two assertions fail.

We note, as a preliminary matter, that this is an appeal from a suspension of a driver's license—a civil case. Thus, unlike in a criminal case where the State must prove

5

the elements of a crime beyond a reasonable doubt, Murray bore the burden before the administrative law judge and the district court to prove that she had not been driving her Jeep while intoxicated. K.S.A. 2017 Supp. 8-1020(k), (p). Neither the ALJ nor the district court found she met this burden; in fact, the district court expressly noted it did not find Murray's version of the events credible.

Appellate courts considering license-suspension decisions employ a mixed standard of review, depending on the nature of the questions presented. We review the district court's factual findings for substantial competent evidence and its legal conclusions de novo. *Creecy v. Kansas Dept. of Revenue*, 310 Kan. 454, 466, 447 P.3d 959 (2019). Substantial competent evidence is relevant and substantive evidence that furnishes a sufficient basis of fact to reasonably resolve the issues in the case. 310 Kan. at 469. In evaluating whether such evidence existed before the district court, we do not reevaluate the credibility of witnesses, redetermine questions of fact, or reweigh evidence in conflict. 310 Kan. at 469.

A person violates K.S.A. 2017 Supp. 8-1567(a) by "operating or attempting to operate a vehicle" while impaired by alcohol or drugs, as defined in that statute. K.S.A. 2017 Supp. 8-1001(b)(1) similarly states an officer may request a person to submit to various forms of testing for drugs or alcohol if "at the time of the request, the officer has reasonable grounds to believe the person was operating or attempting to operate a vehicle while under the influence of alcohol" and "[t]he person has been arrested or otherwise taken into custody for any violation of any state statute, county resolution or city ordinance." The Kansas Supreme Court has held the term "operate"—in the context of the driving under the influence—is synonymous with "drive" and requires some movement of the vehicle. *State v. Darrow*, 304 Kan. 710, Syl. ¶ 1, 374 P.3d 673 (2016). "Operate" and "attempt to operate" describe different factual circumstances under which "driving" may be proven. *State v. Perkins*, 296 Kan. 162, 166, 290 P.3d 636 (2012). Thus, both

6

K.S.A. 2017 Supp. 8-1567(a) and K.S.A. 2017 Supp. 8-1001(b)(1) require a factual determination that Murray was driving the Jeep.

Appellate courts evaluate "reasonable grounds" by looking to probable cause standards. *Rosendahl v. Kansas Dept. of Revenue*, 310 Kan. 474, Syl. ¶ 3, 447 P.3d 347 (2019); see also *Smith v. Kansas Dept. of Revenue*, 291 Kan. 510, 514, 242 P.3d 1179 (2010) ("the term 'reasonable grounds' synonymous in meaning with 'probable cause'"). "Probable cause to arrest is the reasonable belief, drawn from the totality of information and reasonable inferences available to the arresting officer, that the defendant has committed or is committing a specific crime." *Rosendahl*, 310 Kan. 474, Syl. ¶ 3.

The district court found the evidence showed Murray had been driving the Jeep shortly before Deputy Schantz arrived. Our charge on appeal is not to reweigh the evidence to determine whether we would have made a different finding, but to determine whether there is evidence in the record to support the district court's decision. See *Creecy*, 310 Kan. at 469-70. The district court here cited several facts in the record supporting its finding that Murray was the driver:

- Only 10 minutes passed between the call to dispatch and Schantz finding Murray behind the wheel of the vehicle.

- The description of the Jeep's erratic and aggressive driving was consistent with a car being driven by an intoxicated person.

- Murray was in the driver's seat when Schantz arrived.

- The car belonged to Murray, and she had only met Christensen the night before.

- Murray admitted to drinking, was extremely inebriated, and there were multiple open containers in the vehicle.

7

- Schantz was entitled to discount Murray's self-serving account of why she was behind the driver's seat.

While there was evidence presented to the district court that might have led it to a different conclusion—namely, the 911-caller's reference to the person driving on I-70 as "he" and Murray's repeated insistence that she was not the driver—we find the district court's factual finding that Murray was the driver was supported by substantial competent evidence. It is not the province of this court to reweigh the evidence or reevaluate witnesses' credibility. It is evident that the district court did not find Murray's account credible. Her description of having stopped to use the bathroom was not consistent with her telling the deputies minutes later she needed to use the bathroom. It was unlikely she would be able to accomplish what she claimed in the few minutes before Schantz arrived at the scene—particularly considering her inebriated state and difficulty getting out of the Jeep shortly thereafter. And she acknowledged at the hearing before the district court that she did not have the best recollection as to what happened that evening. The court's factual finding that Murray was the driver is reasonable and supported by the record.

Murray claims that even if Schantz had reasonable grounds to test someone on the scene, "he nevertheless lacked a reasonable basis to test [her] instead of Christensen because a reasonable, prudent person . . . would take the extra two minutes on scene to [talk to] Christensen . . . before deciding who to test, or arrest, for DUI." But the dashcam video shows that Christensen was just as intoxicated and belligerent as Murray, if not more so—he ultimately insisted that the officers handcuff him before he agreed to get out of the Jeep. And there is no evidence that he ever admitted to being the driver. Murray bore the burden of proving that the suspension of her license was inappropriate. She was free to call Christensen as a witness—either before the ALJ or the district court—to testify that he had been driving the Jeep. But she did not do so.

Turning to the 911 call, there is no basis in the record for Murray's assertion that Deputy Schantz knew, or should have known, what pronoun the caller used when describing the Jeep's driver. In fact, the caller also referred to the driver as "that person." This tends to suggest—as the district court concluded—that the caller was using "he" in the general sense. The court surmised: "Using the ways of the world, it is not uncommon for someone to refer to inanimate objects as 'he' or 'she', and for all anyone knew that night, the 911 caller was simply focusing on the vehicle itself." The court's consideration of this evidence was reasonable, and its factual findings are supported by substantial competent evidence in the record.

Murray argues the facts of this case are akin to those in *Darrow*, where the Kansas Supreme Court held the State had not proved the defendant was driving under the influence when she was sitting in the driver's seat of a parked car. 304 Kan. at 714. But in *Darrow*, the State conceded the defendant did not drive the car to the location of her arrest; *Darrow* merely considered whether a defendant's fumbling with the gear shift in a parked car constituted "attempting to operate." 304 Kan. at 712-13. The Department has made no such concession here. Deputy Schantz believed Murray drove the Jeep only shortly before he arrived—there is no question the Jeep was being driven dangerously on I-70. And there is substantial competent evidence supporting the district court's finding that Murray was the driver.

Murray also cites *State v. Bluthardt*, No. 116,401, 2017 WL 948330, at *4 (Kan. App. 2017) (unpublished opinion), where a district court suppressed evidence seized during a safety check when two individuals were passed out in a parked (but running) car. *Bluthardt* was not an appeal from a driver's license suspension, but an interlocutory appeal by the State from a motion to suppress. Accordingly, in *Bluthardt*, the State had the burden of proving the legality of the search—an important distinction from this case. Here, Murray has appealed the suspension of her license and our review is limited to whether the district court's finding is supported by substantial competent evidence. And

9

as in *Darrow*, there was no evidence the defendant in *Bluthardt* drove or attempted to drive—there were no reports of the car being driven. 2017 WL 948330, at \*4.

Finally, Murray argues K.S.A. 2017 Supp. 8-1001(b) is phrased in the present tense, and "suspicion of past, completed, and terminated operation is not a valid basis to request a breath test." Murray cites no authority for this interpretation. Nor does the language of the statute support such a reading. Instead, K.S.A. 2017 Supp. 8-1001(b)(1) empowered an officer to request informed-consent testing if the officer had reasonable grounds to believe a person "*was operating or attempting to operate* a vehicle while under the influence of alcohol or drugs." (Emphasis added.) See also K.S.A. 2019 Supp. 8-1001(b)(1) (an officer may require informed-consent testing when he or she has probable cause to believe "the person *has committed* a violation of K.S.A. 8-1567(a)"). (Emphasis added.) Contrary to Murray's assertion on appeal, K.S.A. 8-1001(b) is written in the past progressive tense—allowing an officer to request testing if he or she believes the person in question *had been driving*—not *is presently driving*—under the influence. Accord *State v. Gracey*, 288 Kan. 252, 257-58, 200 P.3d 1275 (2009) ("judicial interpretation [of statutes] must be reasonable and sensible to effect legislative design and intent").

Substantial competent evidence—and the reasonable inferences drawn therefrom—support the district court's finding that Deputy Schantz had reasonable grounds to believe Murray had been driving the Jeep shortly before his arrival. Because the evidence supports the district court's finding, it follows that the deputy had probable cause to arrest Murray under K.S.A. 2017 Supp. 8-1567(a) and a sufficient basis to request her compliance with testing under K.S.A. 2017 Supp. 8-1001(b).

Affirmed.